# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARLINGTON INDUSTRIES, INC,

    Plaintiff,

    v.

BRIDGEPORT FITTINGS, INC.,

    Defendant.

CIVIL ACTION No. 3:06-CV-1105

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are three (3) of Defendant Bridgeport Fittings, Inc.'s ("Bridgeport") motions for summary judgment. (Docs. 110, 112, 113.) On January 14, 2008, Defendant Bridgeport filed four (4) motions for summary judgment, three (3) of which concern the '831 Patent. In these motions, Defendant requested summary judgment as to non-infringement of the '831 Patent and the '050 Patent (Doc. 110), summary judgment as to non-willfulness as to the '831 Patent and the '050 Patent (Doc. 112), and summary judgment regarding damages as to the '831 Patent and the '050 Patent. (Doc. 113.) On June 27, 2008, the Court ordered a stay of proceedings on the '831 Patent pending a final determination by the U.S. Patent and Trademark Office ("PTO") regarding its *inter partes* reexamination of the '831 Patent. (Doc. 257.) On September 18, 2008, the Court entered a Memorandum and Order granting Bridgeport's motions for summary judgment (Docs. 110, 112, 113) as they pertained to the '050 Patent. (Doc. 307.) As per the stay ordered on June 27, 2008, the Court considered only those arguments pertaining to the '050 Patent and did not consider or discuss the '831 Patent in its September 18, 2008 Memorandum and Order. (*Id.*) Subsequently, on September 29, 2008, Bridgeport filed a Motion to Lift Stay, requesting that the Court either enter summary judgment on the '831 Patent or direct entry of a final

judgment pursuant to Federal Rule of Civil Procedure 54(b). (Doc. 309.) On February 12, 2009, the Court entered a Memorandum and Order vacating its June 27, 2008 Order and lifting the stay on the '831 Patent. (Doc. 325.) The parties provided various briefs in support, opposition, and reply at the time Bridgeport initially filed the current motions, and they readdressed many of the relevant issues in their briefs supporting and opposing Bridgeport's motion to lift the stay. Accordingly, the Court finds that these motions have been completely briefed and are currently ripe for disposition.

Because Plaintiff cannot prove infringement either literally or through the Doctrine of Equivalents, Defendant's motion for summary judgment on non-infringement of the '831 Patent will be granted. As the summary judgment motion for non-infringement will be granted, Defendant's motion for summary judgment on the grounds of non-willfulness and damages as to the '831 Patent will also be granted.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("federal question").

## BACKGROUND[1]

Briefly, Plaintiff Arlington and Defendant Bridgeport are competitors in the field of electrical connectors. (Def.'s Statement of Material Facts in Support of Mot. For Summ. J. ¶ 49, Doc. 114; Pl.'s Res. To Pl.'s Statement of Material Facts ¶ 49, Doc. 154.) This litigation involves the patents of two (2) of these electrical connectors. The second of these patents,

---

[1] This section of the Memorandum is largely based upon, and makes ample use of, the background section found in the Court's September 18, 2008 Memorandum and Order discussing Bridgeport's summary judgment motions with respect to the '050 Patent. (*See* Doc. 307 at 2-10.) The Court has edited and updated this section to provide background details concerning the '831 Patent that are relevant to the motions and questions currently before the Court.

and the patent currently at issue in the summary judgment motions, is U.S. Patent No. 6,521,831 ("the '831 Patent"), which was issued to Mr. Thomas A. Gretz on February 18, 2003. (Doc. 114 ¶ 2; Doc. 154 ¶ 2.) The '831 Patent is entitled "Duplex Electrical Connector with Spring Steel Cable Retainer." (Second Am. Compl. Ex. A, Doc. 102.) The '831 Patent is for an invention which relates to cable terminations and more particularly to duplex or two-wire cable terminations that snap into place and include snap-on cable retainers, neither of which requires twisting for locking. (*Id.*) Plaintiff Arlington alleges that Defendant Bridgeport has infringed Claim 1 of the '831 Patent. (Doc. 114 ¶ 3; Doc. 154 ¶ 3.) Claim 1 provides:

> A duplex electrical connector comprising:
>
> a housing having a cylindrical outbound end, a generally oval inbound end, and an interior channel linking said inbound and said outbound end;
>
> a pair of parallel opening in said inbound end;
>
> a tubular spring steel cable retainer secured in each of said openings in said inbound end for accepting separate cables, said retainers including a set of inwardly extending tangs to receive and engage said separate cables inserted from said inbound end and guide said separate cables toward said cylindrical outbound end in a manner that said separate cables are advanced to said outbound end, said inwardly extending tangs restricting removal of said separate cables by force applied on said separate cables from said inbound end; and
>
> a tubular spring steel adapter secured to said cylindrical outbound end of said housing, said adapter having outwardly extending tangs.

(Second Am. Compl. Ex. A, Doc. 102.) There are numerous features involved in the patent, but one of the main features at issue are the use of a style of connector known as a "duplex connector". (Doc. 114 ¶ 4; Doc. 154 ¶ 4.)

On December 4, 2007, the Court issued its claim construction ruling, construing

3

certain terms at issue in the '050 Patent and the '831 Patent. (Doc. 114 ¶ 5; Doc. 154 ¶ 5; Mem. & Order, Dec. 4, 2007, Doc. 98.) One of the terms at issue in Claim 8 of the '050 Patent was a "spring metal adaptor." (Doc. 114 ¶ 6; Doc. 154 ¶ 6.) The Court construed this term to mean "a split ring or split spring metal adaptor so as to allow the diameter to easily change." (Doc. 114 ¶ 7; Doc. 98 at 32.) The Court also concluded that the limitation of "spring steel adaptor" in Claim 1 of the '831 Patent is subject to the same analysis as the "spring metal adaptor" in the '050 Patent. (Doc. 114 ¶ 11; Doc. 98 at 30.)

Defendant Bridgeport states that its products are not split, as per the expert report of J. Brian P. Williamson. (Doc. 119 Ex. 2 ¶ 32.) Bridgeport further states that the adaptors formed of a continuous piece of metal with no gap that would permit the diameter of the adaptor to easily change. (Doc. 114 ¶ 8.) Bridgeport also states that its products do not have an opening in their circumference that passes through them from side to side. (*Id.*) Plaintiff Arlington disputes Bridgeport's characterization of its products and Bridgeport's characterization of the Court's construction of the patent. (Doc. 154 ¶ 8.) Plaintiff Arlington states that Bridgeport's adaptors are split. (*Id.*) Plaintiff states that the adaptors are split in eight (8) places. (*Id.*) Specifically, Plaintiff references th testimony of Mr. Kenneth Kiely, Bridgeport's Engineering Manager, for the proposition that the products are indeed split in order to permit the diameter to easily change. (*Id.*)

Defendant Bridgeport further states that Plaintiff Arlington's expert, Dr. Christopher D. Rahn admitted that Bridgeport's products do not have a split, and "at the very front of the accused product, if you take a cross-section there, there will be a ring that has no gaps in it." (Doc. 114 ¶ 9; Doc. 119 Ex. 3 at 210; Doc. 119 Ex. 4 at 92.) Defendant further states

4

that Dr. Rahn conceded that if the "spring metal adaptor" required a split, Bridgeport's products would not infringe. (Doc. 114 ¶ 9.) Plaintiff Arlington disputes this characterization of Dr. Rahn's testimony. (Doc. 154 ¶ 9.) Specifically, Arlington points to Dr. Rahn's expert report, which states that the "adaptor is split along the entire length of the adaptor that surrounds the leading end of the connector . . . Upon insertion the ring contracts at the split." (Doc. 154 ¶ 9; Doc. 119 Ex. 4 at 18-19.) Thus, the parties disagree over whether the construction requires a complete split in the ring. Defendant Bridgeport also states that because they have a non-split adaptor ring, its products do not achieve springiness by opening and closing an opening in their circumference. (Doc. 114 ¶ 10.) Plaintiff also disputes this statement, and notes that Mr. Auray, Bridgeport's Rule 30(b)(6) witness, as well as Arlington's expert witness, Dr. Rahn, testified that there was springiness in the adaptor ring. (Doc. 154 ¶ 110.)

In its December 4, 2007 Memorandum and Order, the Court also construed the language regarding the "spring steel adaptor." (Doc. 114 ¶ 11; Doc 98 at 34.) The Court construed the disputed language to mean that "[t]he adaptor is spring steel which is a split ring which in turn permits the diameter of the adaptor to be easily changed." (Doc. 98 at 34.)

In distinguishing the connectors, Bridgeport cites the prosecution history of the parent to the '050 Patent, the '164 Patent. (Doc. 114 ¶ 22.) Specifically, Bridgeport states that Arlington narrowed the term "spring metal adaptor" to require a split ring to distinguish it from prior art. (*Id.*) Bridgeport cites to the prosecution of Arlington's parent '164 Patent, and claims that the PTO examiner rejected the claims in light of U.S. Patent No. 1,725,883 ("the Recker Patent"). (Doc. 114 ¶ 23.) Bridgeport states that Arlington distinguished the '050 Patent from the Recker Patent on the basis that the Recker Patent required a "complete

5

undivided circle so that there can be no springing apart of the periphery of the tube." (*Id.*) Arlington, however, argues that these statements mischaracterize the prosecution history, and that each Claim of each patent has its own prosecution history. (Doc. 154 ¶ 22.) Arlington states that Claim 2 of the '050 Patent, dealing with the split, was not amended over the Recker Patent. (*Id.*)

Mr. Gretz asserts that Arlington manufactures and distributes three commercial embodiments of the invention recited in Claim 1 of the '831 Patent. (Doc. 114 ¶ 42; Doc. 154 ¶ 42.) Gretz further states that these Duplex Products contain every limitation found in Claim 1 of the '831 Patent. (Doc. 114 ¶ 43; Doc. 154 ¶ 43.) Arlington's expert also detailed how these products practice the '831 Patent and meet each of its limitations (Doc. 114 ¶ 44; Doc. 154 ¶ 44) and conclude that Claim 1 of the '831 Patent covers both connectors both with and without inserts (Doc. 114 ¶ 45; Doc. 154 ¶ 45).

Arlington and Bridgeport were previously involved in litigation regarding the '164 Patent and the '050 Patent, in which Arlington alleged that Bridgeport connectors infringed Arlington's patents. (Doc. 114 ¶ 50; Doc. 154 ¶ 50.) This litigation settled prior to March 2004. (Doc. 114 ¶ 50; Doc. 154 ¶ 50.) On or about March 2004, Bridgeport began developing a frustro-conical adaptor for its die cast connectors. (Doc. 114 ¶ 51; Doc. 154 ¶ 51.) On September 13, 2004, Bridgeport filed a patent application based upon the development of this adaptor. (Doc. 114 ¶ 53; Doc. 154 ¶ 53.) On July 12, 2005, the PTO issued U.S. Patent No. 6,916,988 titled "Electrical Connector With Frustro Conical Snap Fit Retaining Ring" ("the '988 Patent") based upon this adaptor. (Doc. 114 ¶ 54; Doc. 154 ¶ 54.) On June 6, 2006 and December 19, 2006, the PTO issued U.S. Patent Nos. 7,057,107 ("the '107 Patent") and 7,151,223 ("the '223 Patent"), which cites the '050 Patent as a reference.

(Doc. 114 ¶ 55; Doc. 154 ¶ 55.)

Arlington did not mark its products with either the '050 Patent number or the '831 Patent number. (Doc. 114 ¶ 56; Doc. 154 ¶ 56.) On December 6, 2005, Arlington notified Bridgeport that the Bridgeport connectors infringed the '050 Patent. (Doc. 114 ¶ 58; Doc. 154 ¶ 58.)

Arlington brought this action on May 31, 2006, alleging that certain of Bridgeport's electrical connectors infringe two (2) of Arlington's patents: Claim 1 of U.S. Patent No. 6,521,831 ("the '831 Patent"), and Claim 8 of U.S. Patent No. 5,266,050 ("the '050 Patent"). On April 13, 2007, the PTO granted a request for *inter partes* reexamination of the '831 Patent. (Doc. 114 ¶ 62; Doc. 154 ¶ 62.)

After a *Markman* Hearing on July 6, 2007, this Court construed disputed language in these patents. (Mem. & Order, Dec. 4, 2007, Doc. 98, at 32-34.) On December 10, 2007, the Court granted Plaintiff leave to file a Second Amended Complaint. (Doc. 101.) The Second Amended Complaint added an allegation of willful infringement of the '831 Patent and a count for unclean hands. (Doc. 102.) On December 21, 2007, Defendant filed its Answer to the Second Amended Complaint. (Doc. 103.)

On January 14, 2008, Plaintiff Arlington moved for partial summary judgment to dismiss Defendant's defense of unenforceability of the '831 Patent. (Doc. 107.) On January 14, 2008, Defendant Bridgeport filed four (4) motions for summary judgment. Currently, three (3) of these motions are before the Court. Defendant requests summary judgment as to non-infringement of the '831 Patent and the '050 Patent (Doc. 110), summary judgment as to non-willfulness as to the '831 Patent and the '050 Patent (Doc. 112), and summary

judgement regarding damages as to the '831 Patent and the '050 Patent. (Doc. 113.) On June 27, 2008, the Court granted in part and denied in part Plaintiff Arlington's motion to stay, staying the issues on the '831 Patent. (Doc. 257.) On September 18, 2008, the Court addressed the three current motions as they pertained to the '050 Patent, and granted all three (3) of Defendant Bridgeport's motions for summary judgment. (Doc. 307.) Due to the June 27, 2008 stay of the '831 Patent (Doc. 257), the Court limited its discussion to the '050 Patent in its September 18, 2008 Memorandum and Order and did not consider the current motions with respect to the '831 Patent. On September 29, 2008, Bridgeport filed a motion to lift the stay in order for the Court to enter summary judgment on the '831 Patent, or in the alternative, to direct entry of a final judgment pursuant to Federal Rule of Civil Procedure 54(b). (Doc. 309.) On February 12, 2009, the Court granted Bridgeport's motion to lift the stay, while denying Bridgeport's alternative motion to certify the summary judgment concerning the '050 Patent. (Doc. 325.) Accordingly, the Court now considers Bridgeport's motions as they pertain to the '831 Patent.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that

8

it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**I.	Infringement**

In its September 18, 2008 Memorandum and Order, the Court identified the standard for patent infringement as follows:

> "A determination of infringement requires a two-step analysis. First, the court construes the asserted claims in order to determine their proper meaning and scope." *Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.,* 308 F.3d 1167, 1176-77 (Fed. Cir., 2002) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996)). "After the court construes the claims, these claims are compared to the accused device." *Id.* (citing *Bell Atl. Network Servs. v. Commc'n Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001)). Claim construction is a question of law for the court, whereas the determination of infringement is a question of fact. *Id.* Whether the product infringes the construed claims literally, or under the doctrine of equivalents, is a question of fact. *Desper Prods., Inc. v. Qsound Labs, Inc.*, 157 F.3d 1325 (Fed. Cir. 1998). However, the construction of the claims may resolve some or all of the infringement issues. *Netwood, LLC v. Centraal Corp.*, 242 F.3d 1347, 1351 (Fed. Cir. 2001) (citing *Vivide Tech., Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).
> In order to establish infringement, "every limitation set forth in the patent claim must be found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*, 939 F2d 1533, 1535 (Fed. Cir. 1991) (citing *Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989)).

(Doc. 307, at 12.)  The Court also identified the relevant standards for literal infringement and the doctrine of equivalents:

> For a finding of literal infringement, each limitation of the claim must be present in the accused device. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). Defendant Bridgeport argues that its products do not literally have at least the following three (3) limitations: (1) a "spring metal adaptor," (2) "outwardly sprung members," and (3) "tubular spring steel cable retainers."
>
> * * *

> "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Eagle Comtronics, Inc. v. Arrow Comm'cn Lab., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002).
>
>> A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method.
>
> *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). Therefore, the key issue is whether the differences between the two products are "insubstantial" to one of ordinary skill in the art. *Eagle Comtronics*, 305 F.3d at 1315. When an element in the "accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result [such a finding] may be relevant to [the] determination [of equivalence]." *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). "To be a[n] . . . 'equivalent,' the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987).
>
> The accused product must contain every limitation, or its equivalent, for a finding of infringement under the Doctrine of Equivalents. *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 398 (Fed. Cir. 1994). But, there is no requirement for "one-to-one correspondence between the components of the accused device and the claimed invention." *Id.* (citing *Intel Corp. v. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991). Infringement may occur if a "combination of its components performs a function performed by a single element in the patented invention." *Id.* Similarly, the Doctrine of Equivalents may apply when separate claim limitations are combined into one component in the accused device. *Id.*

(*Id.*, at 13, 15-16.)

### A. The Court's Findings With Regard to the '050 Patent

In its literal infringement analysis of the '050 Patent's Claim 8 "spring metal adaptor" requirement, the Court referred to its claim construction construing this term to mean "[a]n

adaptor which is circular or round and has circular cross sections. A spring metal adaptor is a split right or split spring metal adaptor so as to allow the diameter to easily change." (Doc. 307 at 13; Doc. 98 at 32.) Comparing this claim construction with Bridgeport's adaptor, the Court noted that Bridgeport's adaptor "is a piece of continuous metal with no gaps. The metal of the adaptor on the leading end creates a complete circle." (Doc. 307 at 14.) Accordingly, the Court found that the accused Bridgeport product was not "split" as required under the claim construction, and did not meet the claim limitation of a "spring metal adaptor." (*Id.* at 15.) Since the failure to meet a single limitation is sufficient to negate literal infringement of a claim, the Court held as a matter of law that there was no literal infringement of the '050 Patent. (*Id.*)

The Court also determined that Bridgeport's product did not infringe on the '050 Patent under the Doctrine of Equivalents. Notably, the Court found that "[h]ere, there is, a split metal adaptor with a diameter that changes, in contrast to an adaptor where the diameter of the entire ring does not change." (*Id.* at 22.) The Court observed that the Arlington and Bridgeport adapters achieved substantially the same function of being placed in the junction box and achieved substantially the same result. (*Id.*) In spite of these similarities, however, the Court found that "the function and result is not achieved in substantially the same way." (*Id.*) The Court based this finding on its observation that "the diameter of Bridgeport's adaptor does not change in its entirety, whereas the 'spring metal adaptor' patented by Arlington has a diameter than changes in its entirety in order to be placed in the junction box." (*Id.*) Since the difference between the two products would cause the claim limitation to be vitiated, the Court found that the Plaintiff could not rely on the

Doctrine of Equivalents with respect to the '050 Patent.

Moreover, the Court found that Arlington's claims were also banned by prosecution estoppel, which bars a patentee from relying on the Doctrine of Equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument. (*Id.* at 23)(citing *Eagle Comtronics*, 305 F.3d at 1315.) The Court reviewed prior litigation between Arlington and Bridgeport concerning the '050 Patent and U.S. Patent No. 5,171,164 ("the '164 Patent") and found that "the prosecution history does reflect that Claim 2 [of the '050 Patent] was effected [sic] by the language stating that the spring metal adaptor would be less than a complete circle. . . [and] reflects that Claim 2 is also bound by a spring metal adaptor formed of less than a complete circle." (*Id.* 26.) The Court further noted that its December 4, 2007 claim construction states that "prior art disclosed an unsplit ring, and this prior art was distinguished by Arlington in the prosecution of the '164 Patent - i.e., that the Recker invention was a complete undivided circle that did not allow for springing apart of the periphery of the tube as provided for in the '164 Patent claims." (Doc. 98 at 17; Doc. 307 at 26.) The Court found that "Arlington narrowed its claim on the spring metal adaptor to distinguish it from the Recker Patent" and traced the use of "spring metal adaptor" in various derivative patents to it's use in Claim 8 of the '050 Patent. (Doc. 307 at 28.) The Court, accordingly, found that "Arlington may not rely on the Doctrine of Equivalents to prove infringement of its spring metal adaptor" because "[t]o allow Arlington to now claim that the spring metal adaptor need not be divided goes against the policy behind prosecution history estoppel." (Doc. 307 at 26-28.)

### B. The '831 Patent

In the brief supporting its motion to lift the Court-ordered stay on the '831 Patent,

Bridgeport calls attention to the Court's claim construction determination that the term "[s]pring steel adaptor [in the '831 Patent] is subject to the same analysis as (spring metal adaptor) in Patent '050." (Doc. 310 at 5; Doc. 98 at 30.) On the basis of this claim construction, Bridgeport further argues that "[b]ecause Bridgeport's adaptor is not split, the accused product does not meet the claim limitation of a 'spring steel adaptor' in Claim 1 of the '831 Patent, and there is no literal infringement as a matter of law for the same reasons previously expressed by the Court." (Doc. 310 at 6.)

Bridgeport further argues that "[t]he court's holding that the accused connectors do not infringe on Claim 8 of the '050 Patent under the doctrine of equivalents also applies to Claim 1 of the '831 Patent." (*Id.*) In support of this argument, Bridgeport first cites to the Court's "all limitations" analysis pertaining to the '050 Patent, arguing that its adaptor does not infringe on Arlington's '831 Patent because it "works in a different way to achieve substantially the same result." (*Id.* at 7.) Second, Bridgeport cites to the Court's "prosecution history estoppel" analysis of the '050 Patent, and argues that the "'831 and '050 Patents both descend from the '164 Patent" and that "the courts finding of prosecution history estoppel also applies to Claim 1 of the '831 Patent." (*Id.* at 8.)

In response to these arguments, Arlington argues that "[s]ummary judgment on the '050 Patent does not foreclose Arlington's infringement claim on the '831 Patent, particularly with respect to the prosecution history estoppel issue." (Doc. 315 at 8.) In particular, Arlington argues that "[t]his Court's doctrine of equivalents ruling on the '050 Patent does not apply to the '831 Patent since they are unrelated patents that are part of different patent families and *do not* originate from the same parent application." (*Id.*)(emphasis original)(footnote omitted.) For this reason, Arlington argues that the "Court's conclusion that

14

the prosecution history of the '164 Patent estops Arlington from the use of the Doctrine of Equivalents cannot be applied to the infringement analysis of the '831 Patent." (*Id.* at 9.)

In light of its December 4, 2007 claim construction, the Court finds that there can be no claim for literal infringement of the '831 Patent. As noted, the Court has previously determined that the "spring steel adaptor" described in the '831 Patent is subject to the same analysis as the "spring metal adaptor" described by the '050 Patent. As the Court has already stated, its "claim construction [for 'spring metal adaptor'] does not state that the adaptor must be split up to the leading end. Nor does the claim construction state that the adaptor may be split except at the leading end. Rather, the claim construction sates that the adaptor must be 'split.'" (Doc. 307 at 14.) Here, just as the Court found with respect to the "spring metal adaptor" named in the '050 Patent, the "spring steel adapter" described in the '831 Patent is not 'split' as required by this Court's claim construction and there can be no claim for literal infringement.

The Court also finds that, under its December 4, 2007 claim construction, the All Limitations Rule preventing Arlington from pursuing an infringement claim on the '050 Patent under the Doctrine of Equivalents is equally applicable with respect to the '831 Patent. As it noted in its analysis of the '050 Patent, "[t]he Court's construction of a spring metal adaptor was 'a split ring or split spring metal adaptor so as to allow the diameter to easily change." (Doc. 307 at 21)(quoting Doc. 98 at 32.) Applying the Court's analysis of the '050 spring metal adaptor to the '831 spring steel adaptor yields the same result. The construction of the '831 Patent requires a complete split in the metal or steel of the adaptor, which does not occur in the accused Bridgeport product. (*See* Doc. 307 at 21.) Here again, the Court finds that "[t]he purpose of the split ring is to permit the diameter of the adapter to easily change.

15

In this case, there is evidence that the diameter of the Bridgeport product's adaptor does not change in totality." (*Id*. at 21-22.) "The All Limitations Rule requires that each limitation be met." (*Id.* at 22.) Here' the limitation of a "spring steel adapter" is not met, as there is no "split" in Bridgeport's adaptor which would allow the diameter of the entire adaptor to change. (*c.f.* Doc. 307 at 22.) Since Bridgeport's adaptor works in a different way to achieve substantially the same result as Arlington's adaptor, a finding of infringement of the '831 Patent under the Doctrine of Equivalents would vitiate the claim limitation. Thus, Arlington may not rely on the Doctrine of Equivalents with respect to its claims concerning the '831 Patent.

Arlington's argument that the '831 Patent and the '164 Patent did not originate from the same parent application, (*see* Doc. 309 at 8-10), does raise the question of whether Arlington's claims concerning the '831 Patent would be barred by prosecution history estoppel. However, the Court need not consider this question as it has already determined that Arlington's '831 Patent claims cannot proceed under the Doctrine of Equivalents without vitiating the claim limitation. Thus, even if the Court were to determine, as Arlington suggests, that the '831 Patent did not descend from the '164 Patent and that Arlington was not estopped from pursing its claims due to prior prosecution, Arlington would still be unable to rely upon the Doctrine of Equivalents to pursue its '831 Patent claims.

As the Court has determined that the accused Bridgeport products, with respect to the '831 Patent, do not satisfy the limitation of a spring steel adaptor literally or under the Doctrine of Equivalents, the Court will grant Bridgeport's motion for summary judgment as to non-infringement of the '050 Patent.

## II. Non-Willfulness and Damages

As the Court has determined that the accused products do not infringe on the '831 Patent, Defendant Bridgeport's motions for summary judgment regarding non-willfulness and damages will also be granted.

## CONCLUSION

Because Plaintiff cannot prove literal infringement because Bridgeport's spring steel adaptor is not "split," and because the All Limitations Rule bars from Plaintiff using the Doctrine of Equivalents to prove infringement, the Court will grant Defendant Bridgeport's motion for summary on non-infringement of the '831 Patent. (Doc. 110.) Furthermore, because the Court will grant Defendant's motion for non-infringement on the '831 Patent, the Court will also grant Defendant's motion for summary judgment on non-willfulness and damages on the '831 Patent. (Docs. 112 and 113.)

An appropriate Order follows.


| May 8, 2009 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARLINGTON INDUSTRIES, INC.,

    Plaintiff,

    v.

BRIDGEPORT FITTINGS, INC.,

    Defendant.

CIVIL ACTION No. 3:06-CV-1105

(JUDGE CAPUTO)

## ORDER

Now, this __8th__ day of May, 2009, it is **HEREBY ORDERED** that:

(1)     Defendant Bridgeport's motion for summary judgment as to non-infringement of the '831 Patent (Doc. 110) is **GRANTED**.

(2)     Defendant Bridgeport's motion for summary judgment as to non-willfulness as the '831 Patent (Doc. 112) is **GRANTED**.

(3)     Defendant Bridgeport's motion for summary judgement regarding damages as to the '831 Patent (Doc. 113) is **GRANTED**.

                                                            /s/ A. Richard Caputo
                                                            A. Richard Caputo
                                                            United States District Judge