**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:06-CV-1105** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

This is a patent infringement action filed by Arlington Industries, Inc.

("Arlington").  On July 18, 2011, the court granted Arlington's motion for

preliminary injunction.  (Doc. 392).  Presently before the court is a motion for

reconsideration (Doc. 396) filed by Bridgeport Fittings, Inc. ("Bridgeport").

Bridgeport asks the court to: (1) modify the security amount set in its July 18, 2011

Order ("July 18 Order") (Doc. 392) granting the motion for preliminary injunction,

and (2) modify the release date of the security set in the July 19, 2011 Order ("July

19 Order") (Doc. 394).  Arlington opposes the request to modify the security amount

set in the July 18 Order but does not oppose modification of the July 19 Order.  For

the reasons that follow the court will grant the motion in its entirety.

## I.   <u>Background</u>[1]

On July 18, 2011, this court granted the motion for a preliminary injunction

(Doc. 369) filed by Arlington pursuant to Federal Rule of Civil Procedure 65 to enjoy

---

[1]  The litigation history between the two parties is extensive.  The court only
recites the background relevant to the instant motion.

Bridgeport from directly or indirectly making, using, selling, offering for sale or importing, or causing or inducing others to make, use, sell, offer to sell, or import Bridgeport's Whipper-Snap Duplex products ("the duplex connectors"), catalog numbers 3838ASP and 3838SP.  (Doc. 392).  In accordance with Rule 65(c), the court ordered Arlington to post security in the amount of $17,750, twenty-five percent of the profits Bridgeport expected to lose ($71,000) between issuance of the preliminary injunction and the expiration of the patent allegedly infringed by Bridgeport's duplex connectors.  (Id. at 26).  Arlington posted the security the following day, upon which time the preliminary injunction took effect.  (See id.; see also Doc. 393).  On the same date, July 19, 2011, the court issued an order directing the Clerk of Court to invest the monies into an interest-bearing account "until December 5, 2011 [the expiration date of the patent], or until order of the court directing release of the funds, whichever occurs first."  (Doc. 394).

On August 2, 2011, Bridgeport filed the instant motion for reconsideration. (Doc. 397).  Bridgeport seeks reconsideration of the security amount and the date of release of the security in order to correct what Bridgeport believes to be clear error and to prevent manifest injustice.  Bridgeport contends that the security amount—set at twenty-five percent of its expected lost profits—limits it from recovering its full amount of damages in the event that Bridgeport is later found to have been wrongfully enjoined.  (Doc. 397, at 2).  Bridgeport asks the court to modify the July 18 Order and adjust the security amount to reflect the full amount of lost profits Bridgeport expects to suffer as a result of the injunction.

Bridgeport further asserts that the release date of December 5, 2011 set in the July 19 Order "renders the bond a nullity" because a claim for recovery under the bond is not triggered until after a final judgment on the merits, which will not occur before December 5, 2011. (Id.) Thus, release of the posted security on December 5, 2011 will prevent Bridgeport from asserting a claim for damages against the security even if Bridgeport prevails on the merits. (Id. at 3). Bridgeport therefore asks the court to modify its July 19 Order to provide for maintenance of the monies in the interest-bearing account until the entry of final judgment.

Arlington objects to Bridgeport's motion for reconsideration of the July 18 Order contending that the motion is untimely under Local Rule 7.10. (Doc. 402, at 3). On the merits, Arlington asserts that the court properly exercised its discretion in setting the security amount at twenty-five percent of Bridgeport's alleged lost profits, and, moreover, Bridgeport failed to present any evidence to substantiate its lost profits claim. (Id. at 4-10). Arlington does not, however, oppose the request to modify the July 19 Order to maintain the security until entry of final judgment in this action. (Doc. 402, at 3). The motion has been fully briefed and is ripe for consideration.[2]

---

[2] On August 12, 2011, Bridgeport filed a notice of appeal of this court's entry of the preliminary injunction. (See Doc. 399); Arlington Indus., Inc. v. Bridgeport Fittings, Inc., No. 2011-1552 (Fed. Cir. Aug. 31, 2011). Pursuant to Federal Rule of Civil Procedure 62(c), "the court may suspend, modify, restore, or grant an injunction" while an appeal is pending. FED. R. CIV. P. 62(c). Thus, the court retains jurisdiction to modify the preliminary injunction despite appeal of the matter to the Federal Circuit. See Venen v. Sweet, 758 F.2d 117, 120 n.2 (3d Cir. 1985).

## II.   **Legal Standard**

Under Local Rule 7.10 a party may move for reconsideration of a court order within fourteen days of the entry of the order.  <u>See</u> L.R. 7.10.  The purpose of a motion for reconsideration is to present newly discovered evidence or to correct manifest errors of law or fact.  <u>See</u> <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985); <u>see</u> <u>also</u> <u>Max's Seafood Café v. Qunteros</u>, 176 F.3d 669, 677 (3d Cir. 1999). The court possesses inherent power to reconsider its interlocutory orders "when it is consonant with justice to do so."  <u>United States v. Jerry</u>, 487 F.2d 600, 605 (3d Cir. 1973); <u>Alea N. Am. Ins. Co. v. Salem Masonry Co.</u> 301 F. App'x 119, 121 (3d Cir. 2008).  However, a party may not invoke a motion for reconsideration as a means to relitigate matters of disagreement with the court or to raise stale arguments anew. <u>See</u> <u>Abu-Jamal v. Horn</u>, No. Civ. A. 99-5089, 2001 WL 1609761, at *9 (E.D. Pa. Dec. 18, 2001); <u>see also</u> <u>Bhatnagar v. Surrendra Overseas Ltd.</u>, 52 F.3d 1220, 1231 (3d Cir. 1995) (rejecting a litigant's "classic attempt at a 'second bite at the apple'").

Local Rule 7.10 excludes from its fourteen-day deadline motions to alter or amend judgment brought pursuant to Federal Rule of Civil Procedure 59.  Rule 59 permits a party to file a motion to alter or amend a district court judgment "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  The basis for a Rule 59 motion is essential the same as for a motion for reconsideration under Local Rule 7.10.  "A proper motion to alter or amend judgment 'must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct

4

clear error [of law] or prevent manifest injustice.'" <u>North River Ins. Co. v. CIGNA</u>

<u>Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995) (citations and quotations

omitted).  The main difference between a motion for reconsideration under Local

Rule 7.10 and a motion to alter or amend judgment under Rule 59(e) is that a

motion for reconsideration under Local Rule may be filed in response to any order

of the court, not solely after the entry of judgment.

**III.**   <u>**Discussion**</u>

    **A.**   <u>**Timeliness of Motion for Reconsideration**</u>

    Bridgeport filed its motion for reconsideration on August 2, 2011, fifteen days

after entry of the order granting the preliminary injunction, one day past the

fourteen-day period allotted by Local Rule 7.10.  (<u>See</u> Doc. 396).  Arlington contends

that Bridgeport's motion for reconsideration of the July 18 Order is therefore

untimely and should not be considered by the court.  Bridgeport counters that the

motion is timely for two reasons: (1) the motion for reconsideration, despite its title,

is, in actuality, a timely motion to alter or amend judgment pursuant to Federal

Rule of Civil Procedure 59(e), and (2) the motion is timely as a motion for

reconsideration under Local Rule 7.10 because the preliminary injunction granted

in the July 18 Order did not become effective until Arlington posted the security

amount on July 19, 2011.  (<u>See</u> Doc. 403, at 3-5 & n.2).

    If the motion is deemed a motion for reconsideration under Local Rule, the

motion is untimely.  The fourteen-day period beings to run upon *entry* of the order

at issue.  <u>See</u> L.R. 7.10.  If the motion is deemed a Rule 59(e) motion, it is clearly

timely.[3]  Regardless of whether the motion is a motion for reconsideration under

Local Rule or a motion to alter or amend judgment under Rule 59(e), the court will

consider the merits of the motion.  See L.R. 1.3 (allowing the court to suspend the

local rules in individual cases).

**B.    Security Amount for Preliminary Injunction**

Bridgeport requests that the court reconsider and increase the security

amount set in granting the preliminary injunction.  Pursuant to Federal Rule of

Civil Procedure 65(c) "[t]he court may issue a preliminary injunction . . . only if the

movant gives security in an amount that the court considers proper to pay the costs

and damages sustained by any party found to have been wrongfully enjoined or

restrained."  FED. R. CIV. P. 65(c).  The Third Circuit strictly interprets the security

bond requirement of Rule 65(c).  Elliott v. Kiesewetter, 98 F.3d 47, 59 (3d Cir. 1996)

(citing Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 210 (3d Cir. 1990).

The security bond requirement is strictly enforced because "[a] party injured by the

issuance of an injunction later determined to be erroneous has no action for

damages in the absence of a bond."  W.R. Grace and Co. v. Local Union 759, Int'l

Union of the United Rubber, Cork, Linoleum and Plastic Workers of Am., 461 U.S.

---

[3]  A preliminary injunction generally qualifies as a judgment from which an immediate appeal may be taken.  See People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 233 n.5 (3d Cir. 2008) (citing FED. R. CIV. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.")).  A party may therefore file a motion for reconsideration of an order granting a preliminary injunction pursuant to Rule 59(e).  See Flavia v. Indiana Univ. of Penn., 7 F.3d 332, 337-38 (3d Cir. 1993).

757, 770 n.14 (1983); see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882

F.2d 797, 804 (3d Cir. 1989) (stating that "with rare exceptions, a defendant

wrongfully enjoined has recourse only against the bond").  The Third Circuit notes

the important policies undergirding a strict application of the bond requirement in

the context of injunctions: "[t]he rule limiting liability to the amount of the bond

provides the plaintiff with notice of the maximum extent of her liability.  The bond

can thus be seen as a contract in which the court and plaintiff 'agree' to the bond

amount as the 'price' of a wrongful injunction."  Id. at 804 n.9 (citation and

quotation omitted).

Although the requirement of a security bond is strictly enforced, the

determination of the *bond amount* is within the district court's discretion.  See

Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010) (citing Frank's

GMC Truck Center, Inc., 847 F.2d 100, 103 (3d Cir. 1988)); Sanofi-Synthelabo v.

Apotex, Inc., 470 F.3d 1368, 1385 (Fed. Cir. 2006); see also Fed. R. Civ. P. 65(c)

(stating that the movant must give security for the issuance of a preliminary

injunction "in an amount that *the court considers proper*" (emphasis added)).  Given

that the only recourse against wrongful enjoinment is against the bond, courts often

conclude that '[w]hen setting the amount of security, district courts should err on

the high side.'  See Scanvec Amiable Ltd. v. Chang, No. Civ. A. 02-6950, 2002 WL

32341772, at *3 (E.D. Pa. Nov. 1, 2002) (quoting Mead Johnson & Co. v. Abbott Lab.,

201 F.3d 883, 888 (7th Cir. 2000)).

Bridgeport contends that it is erroneous and manifestly unjust to require Arlington to post only 25 percent of Bridgeport's expected lost profits, thereby leaving Bridgeport to face a loss of 75 percent of its damages from the wrongful enjoinment if it is successful on the merits.  (Doc. 397, at 6).  Arlington counters that the bond set by the court was clearly within the court's discretion and, given Arlington's strong likelihood of success, there is a minimal chance that Bridgeport will suffer any harm as a result of the bond set at 25 percent of Bridgeport's expected damages.  (Doc. 402, at 6).  Additionally, Arlington asserts that Bridgeport failed to substantiate its claim for $71,000 in lost profits.  (Id. at 7-10).

Arlington cites Decade Industries v. Wood Technology, Inc., 100 F. Supp. 2d 979 (D. Minn. 2000), in support of its position that the strong likelihood of success results in a minimal chance of cognizable harm to Bridgeport.  However, Decade Industries did not involve a preliminary injunction bond set at a percentage of the damages figure suggested by the defendant and relied upon by the court.  In Decade Industries, the district court relied on the defendant's previous conduct in which defendant demonstrated its ability to quickly rework a product design and place it on the market.  Id. at 983.  The court thus found that there was a minimal chance the defendant would suffer significant cognizable harm from an injunction and set the bond at $10,000.  Id. at 984.  The court made no indication that the defendant had asserted a specific damages figure, or that the court had relied upon any such damages figure.  The instant matter is factually distinct, Bridgeport has asserted a specific damages figure—a cognizable harm—likely to result from the

8

imposition of the preliminary injunction, and there is no suggestion of a quick design-around to avoid the damages.

With respect to the lost profits figure of $71,000, the court notes that it specifically relied upon Bridgeport's calculation of lost profits, which was asserted by Bridgeport's counsel at the preliminary injunction hearing, in setting the security bond amount in the court's July 18, 2011 Memorandum and Order.  (Doc. 392, at 25-26).  Arlington contends that when a defendant's purported damages from a preliminary injunction are excessive, or purely speculative courts often require a bond substantially lower than the requested bond amount.  (Doc. 402, at 7 (citing Oakley Inc. v. Sunglass Hut Int'l, No. 01-CV-1065, 2001 WL 1683252, at *12-13 (C.D. Cal. Dec. 7, 2001) (ordering $100,000 security bond after finding lack of evidence to substantiate defendant's requests for bond ranging from $5 million to $100 million); 3M Unitek Corp. v. Ormco Co., 96 F. Supp. 2d 1042, 1052 (C.D. Cal. 2000) (calling defendant's request for $10 million security bond "excessive" and "purely speculative" and finding $500,000 bond appropriate); AB Electrolux v. Bermil Indus. Corp., 481 F. Supp. 2d 325, 336-37 (S.D.N.Y. 2007) (setting $350,000 security bond amount after finding defendant provided no basis for asserted $3 to $5 million in lost profits)).

At the preliminary injunction hearing, the court inquired as to the source of the $71,000 damages calculation.  (Doc. 395, at 123).  Counsel for Bridgeport noted that Bridgeport's CFO made the calculation the morning of the hearing in response to Arlington's reply brief to the motion for preliminary injunction filed the previous

9

evening.  (Id.)  Counsel offered to file a supplemental declaration with respect to the

damages figure, but the court informed counsel that it was unnecessary.  (Id. at 124-

25).  In response to Arlington's contention that there is no evidence to substantiate

Bridgeport's claim for lost profits, Bridgeport has submitted a supplemental

declaration of its CFO setting forth the damages Bridgeport will suffer as a result of

the preliminary injunction.  (Doc. 404).  The court will accept for the purpose of this

motion, just as it did for the purpose of the preliminary injunction, the figure of

$71,000 as an accurate calculation of the damages Bridgeport expects to suffer as a

result of the preliminary injunction should it be determined Bridgeport was

wrongfully enjoined.  In the instant matter, the requested bond amount is neither

excessive nor purely speculative.  The cases cited by Arlington are factually distinct.

Neither party has pointed the court to a case in which a court set the Rule 65(c)

security at a percentage of damages, where the court has specifically relied upon

the damages figure asserted by the defendant.

The case law is clear that recovery of damages for an erroneously issued

injunction cannot exceed the amount of the security bond.  See W.R. Grace & Co.,

461 U.S. at 770 n.14.  Although the bond amount is within the court's discretion, the

court finds that it would be manifestly unjust to maintain the security at only 25

percent of the damages Bridgeport will purportedly suffer should the preliminary

injunction be deemed erroneous.  In the event Bridgeport is successful on the

merits, Bridgeport would be limited to recovery of the security amount and thus

would be precluded from obtaining damages in excess of the current security of $17,750.

Arlington has not indicated that posting a higher security will cause any hardship to it.  The amount Arlington will have to pay to post a security of $71,000 is minimal and, Arlington will not pay anything if Arlington is successful on the merits.  In comparison to the potential loss of 75 percent of its damages if Bridgeport is successful, the court concludes that, despite the substantial likelihood of success by Arlington, it is manifestly unjust to put the risk of loss of 75 percent of its damages on the party enjoined.

Importantly, the court notes that setting the security bond amount at $71,000 does not entitle Bridgeport to that sum if Bridgeport is successful on the merits. Bridgeport will still bear the burden of proof on the amount of its losses should it be deemed wrongfully enjoined.  See Virginia Plastics Co. v. Biostim, Inc., 820 F.2d 76, 80 n.6 (3d Cir. 1987) (stating that in order to recover on a bond, the wrongfully enjoined defendant must prove what damages were proximately caused by the injunction); Mead Johnson, 201 F.3d at 888.  The court will grant the motion to modify the July 18 Order to reflect a security bond amount of $71,000.

## C.    Bond Release Date

Finally, Bridgeport contends that the July 19 Order directing the Clerk of Court to release the security bond monies by December 5, 2011 renders the security bond a nullity because the matter will not be decided on the merits before December 5, 2011. (Doc. 397, at 6).  Bridgeport requests that the court modify its

11

July 19 Order and direct the Clerk of Court to retain the security bond in an

interest-bearing account until the entry of final judgment in this matter.  (Id. at 8).

Arlington does not oppose Bridgeport's request to modify the July 19 Order to

maintain the security bond funds until the entry of final judgment.  Bridgeport

correctly notes that recovery under the security bond is triggered only after final

judgment on the merits in favor of the enjoined party.  See Clark v. K-Mart Corp.,

979 F.2d 965, 969 (3d Cir. 1992) (citing Am. Bible Soc'y v. Blount, 446 F.2d 588, 594-

95 & n.12 (3d Cir. 1971)).  Given that the only recourse for a defendant wrongfully

enjoined is against the security bond, see Instant Air Freight Co., 882 F.2d at 804, if

the security bond is released prior to a merits determination, Bridgeport will be left

without any remedy should it be determined that the preliminary injunction was

improvidently granted.  See Universal Athletic Sales Co. v. American Gym, 480 F.

Supp. 408, 424 (W.D. Pa. 1979).  The court will therefore grant the request.

**III.**     **Conclusion**

For the reasons set forth above, the injunction itself shall remain

undisturbed, but the motion for reconsideration of the bond amount is granted.

The court will modify its Orders dated July 18, 2011, and July 19, 2011.  An

appropriate order is attached.

        S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       October 17, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:06-CV-1105** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 17th day of October, 2011, upon consideration of the motion

for reconsideration (Doc. 396) filed by Bridgeport Fittings, Inc. ("Bridgeport"), and

for the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that:

1. The motion for reconsideration (Doc. 396) is GRANTED.

2. The court will issue separate amending orders to reflect a security amount of $71,000, and a release date for the security subsequent to the entry of judgment in the above-captioned matter.


   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge