**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:06-CV-1105** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is Arlington Industries, Inc.'s ("Arlington") motion (Doc. 429) for summary judgment.  Arlington claims that defendant Bridgeport Fittings, Inc.'s ("Bridgeport") Whipper-Snap Duplex Connectors ("Duplex Connectors"), catalog numbers 3838ASP and 3838SP, infringe Arlington's patent number 5,266,050 ("the '050 patent").  For the reasons that follow, the court will grant the motion.

**I.    <u>Background</u>**

Arlington and Bridgeport are fierce competitors in the electrical conduit fitting industry.  This case concerns a particular type of electrical conduit fitting with a snap-in feature.  Litigation between the parties over the patent underlying this type of fitting has been ongoing since 2001.  <u>See</u> <u>Arlington Indus., Inc. v. Bridgeport Fittings, Inc.</u>, Civ. A. No. 3:01-CV-0485 (M.D. Pa.) (hereinafter "<u>Arlington I</u>").  The <u>Arlington I</u> litigation instituted in 2001 originally concerned only Bridgeport's Single Connector snap-in products.  The Duplex Connectors that form the basis of Arlington's present motion for summary judgment were first

asserted as infringing products in the above-captioned case in 2006 ("Arlington II"). (Doc. 3).  The Duplex Connectors became a part of the Arlington I litigation during the discovery phase of that litigation, but after the same claim was asserted in the instant litigation.  Unbeknownst to Honorable A. Richard Caputo, who was initially assigned to the above-captioned case,[1]  and the undersigned, who presided over the Arlington I litigation, the Duplex Connectors were subject to litigation in two cases for identical allegations of infringement of Claim 8 of the '050 patent.  Through oversight or inadvertence, neither party found it necessary to seek immediate consolidation, and this matter and Arlington I proceeded on parallel tracks.  Suffice it to say that the procedural path leading to the instant motion has been rather complicated.

## A.    Arlington's '050 Patent

In 1992, Arlington developed and manufactured a new type of electrical conduit fitting, intended to replace previous units whose installation required the use of two hands to screw the device into an electrical junction box.[2]  (See Doc. 102, Ex. B).  This connector features a circular spring metal adaptor, to which at least two outwardly sprung members are attached at the trailing end.  (See id. at col. 10). When the adaptor is inserted into the knockout hole of an electrical junction box, its

---

[1]  Judge Caputo transferred the case to the undersigned on June 24, 2011. (Doc. 368).

[2]  An electrical junction box is used to run multiple conductors in two or more directions, allowing power to flow simultaneously to various electrical devices.

outwardly sprung members lock the adaptor into place.  (See id.)  Thus, Arlington's

connector allows a user to quickly connect the device to a junction box using one

hand instead of two, thereby reducing the time and effort required during

installation.  (See id. at col. 1).

On December 15, 1992, Arlington was awarded United States Patent Number

5,171,164 ("the '164 patent") which covered the design of the above-described

device.  (Arlington I, Doc. 404 ¶ 2; Doc. 432 ¶ 2).  Arlington acquired the '050 patent

the following year.  (Doc. 102, Ex. B).  The '050 patent is a "continuation patent,"

meaning that it shares a common specification with the '164 patent, but includes

different claims.  (Arlington I, Doc. 404 ¶ 2; Doc. 432 ¶ 2.)  The '050 patent

encompasses eight claims, only one of which is the focus of the instant litigation.

The claim at issue—Claim 8—reads as follows:

> A quick connect fitting for an electrical junction box comprising:
>
> a hollow electrical connector through which an electrical conductor
>     may be inserted having a leading end thereof for insertion in a
>     hole in an electrical junction box;
>
> a circular spring metal adaptor surrounding said leading end of said
>     electrical connector which has a leading end, a trailing end, and
>     an intermediate body;
>
> at least two outwardly sprung members carried by said metal adaptor
>     near said trailing end of said adaptor which engage the side walls
>     of the hole in the junction box into which said adaptor is inserted;
>
> at least two spring locking members carried by said metal adaptor that
>     spring inward to a retracted position to permit said adaptor and
>     locking members to be inserted in a hole in an electrical junction
>     box and spring outward to lock said electrical connector from
>     being withdrawn through the hole; and

an arrangement on said connector for limiting the distance said
      connector can be inserted into the hole in the junction box.

In 1999, Bridgeport introduced its own product line of quick-connect fittings called the "Snap-In Fitting." (See Arlington I, Doc. 170 at 7-10). The "Snap-In Fittings" were designed with characteristics nearly identical to those featured in Arlington's patented products. (See Arlington I, Doc. 310 ¶ 2.5). Arlington filed the Arlington I litigation in March 2001, alleging that the "Snap-In Fittings" infringed both the '164 and the '050 patents. (See Arlington I, Doc. 1).

**B.**    **The Whipper-Snap Duplex Connectors**

In September 2005, Bridgeport designed a new quick-connect electrical fitting, which it called the "Whipper-Snap." (Arlington I, Doc. 404 ¶ 14; Doc. 432 ¶ 14). The Whipper-Snap is similar to the '050 patent, in that it features a circular spring metal adaptor that is affixed atop a hollow connector body. (See Arlington I, Doc. 383 ¶ 9(a); Doc. 438 at 1; Doc. 439 ¶ 9(a)). Attached to the leading end of the adaptor are a total of four tensioning tangs and two anchoring tabs. (See Arlington I, Doc. 307, at 5). The tensioning tangs' purpose is twofold: (1) to lock the adaptor securely in position when the fitting is inserted into a knockout hole, and (2) to thereafter "maintain good electrical continuity, or ground, between the electrical connector, the junction box and the electrical source leading to the box." (See Arlington I, Doc. 384, Ex. K ¶¶ 17, 20; Doc. 394, Ex. A ¶¶ 36, 44; Doc. 401 at 16-18; Doc. 425, Ex. M at 85-88; Doc. 439 ¶ 11(d)). The purpose of the anchoring tabs is to

fasten the spring metal adaptor durably to the hollow connector body.  (See Arlington I, Doc. 394, Ex. A ¶ 38).

### C.   Protracted Litigation

On May 31, 2006, Arlington filed the instant litigation alleging that Bridgeport's Duplex Connectors—two products in the Whipper-Snap product line—infringed a separate Arlington patent, number 6,521,831 ("the '831 patent").[3] (Doc. 1).  By amended complaint dated June 27, 2006, Arlington asserted a second claim against the Duplex Connectors, alleging that the Duplex Connectors infringed Claim 8 of the '050 patent.  (Doc. 3).  The above-captioned matter (hereinafter "Arlington II") was initially assigned to the Honorable A. Richard Caputo.  Shortly after commencing this litigation, Arlington also amended its complaint in Arlington I to add the Duplex Connectors as products infringing the '050 patent.

On December 4, 2007, Judge Caputo issued his Markman claim construction ruling on the '050 patent.  (Doc. 98).  Nearly three months later, on February 25, 2008, the Arlington I court issued its Markman ruling in which it construed certain terms of Claim 8 of the '050 patent in a manner materially different from the construction issued by Judge Caputo.  (Arlington I, Doc. 376).  The parties filed motions for summary judgment in each case.  (Arlington I, Docs. 382, 385; Arlington II, Docs. 110, 112, 113).  On September 18, 2008, Judge Caputo granted Bridgeport's

---

[3] The '831 patent claims against the Duplex Connectors are currently stayed pending the appeal of the United States Patent & Trademark Office reexamination to the Federal Circuit.  (Docs. 426, 427, 428).

motions for summary judgment in the above-captioned case, concluding that
Arlington could not prove infringement of the '050 patent by Bridgeport's Duplex
Connectors.  (Doc. 307).  However, on February 4, 2009, the <u>Arlington I</u> court denied
the parties' cross-motions for summary judgment on the issue of infringement and
set trial for September 2009.  (<u>See</u> <u>Arlington I</u>, Docs. 471, 474).

Days before trial, Bridgeport filed a motion to stay the trial in <u>Arlington I</u> on
claim and issue preclusion grounds as a result of Judge Caputo's judgment of non-
infringement of the Duplex Connectors in the above-captioned case.  (<u>Arlington I</u>,
Doc. 561).  The undersigned denied the motion, but excised the Duplex Connectors
from trial to circumvent the issue preclusion conundrum stemming from conflicting
claim constructions.  (<u>Arlington I</u>, Doc. 584).  A jury subsequently returned a verdict
in favor of Arlington, finding that thirty of Bridgeport's Single Connector products
infringed the '050 patent.  (<u>Arlington I</u>, Doc. 632).

After the trial, Bridgeport filed a motion for renewed judgment as a matter of
law and for a new trial, alleging in part that res judicata barred the jury's verdict
concerning the Single Connectors.  <u>See</u> <u>Arlington I</u>, 692 F. Supp. 2d 487, 498-503
(M.D. Pa. 2010).  The court found that Judge Caputo's claim construction in
<u>Arlington II</u> could be entitled to issue preclusive effect, but the court declined to
apply the doctrine because "relitigation has already occurred" and Bridgeport
delayed in presenting the issue until "the eve of a complex trial with witnesses,
advocates, and the court assembled at significant expense."  <u>Id.</u> at 502.  The court
also found that claim preclusion did not apply because Bridgeport failed to

establish that the Single Connectors adjudged infringing at trial were "essentially the same" device as the Duplex Connectors adjudged non-infringing in <u>Arlington II</u> pursuant to Judge Caputo's claim construction.  <u>Id.</u> at 503.  Bridgeport also filed a motion to alter or amend the judgment in <u>Arlington I</u>, requesting in part that the court enter final judgment with respect to the Duplex Connectors.  (See <u>Arlington I</u>, Doc. 774).  The <u>Arlington I</u> court found that, based on Judge Caputo's judgment of non-infringement of the Duplex Connectors in the above-captioned case, Bridgeport was entitled to judgment of non-infringement as a matter of law on the Duplex Connectors.  (<u>Id.</u>)

The parties appealed both cases to the United States Court of Appeals for the Federal Circuit.  On January 20, 2011, the Federal Circuit issued its opinion with respect to the above-captioned matter.  <u>See</u> <u>Arlington II</u>, 632 F.3d 1246 (Fed. Cir. 2011).  The Federal Circuit vacated the grant of summary judgment of non-infringement of the '050 patent by the Duplex Connectors due to an erroneous claim construction of the '050 patent.  <u>Id.</u>  The mandate issued on April 21, 2011. (Doc. 365).  Judge Caputo subsequently re-opened the above captioned matter on June 24, 2011 and re-assigned the case to the undersigned for all further proceedings.  (Doc. 368).  On July 18, 2011, the court granted Arlington's motion for preliminary injunction, enjoining Bridgeport from directly or indirectly making, using, selling, offering to sell or importing, or causing or inducing others to make, use, sell, offer to sell or import the Duplex Connectors.  (Doc. 392).  That

preliminary injunction dissolved on December 4, 2011, when the '050 patent expired.

Following the Federal Circuit's decision in the above-captioned matter, the court in Arlington I issued an indicative ruling under Federal Rule of Civil Procedure 62.1 that it would vacate the court's final judgment of non-infringement by the Duplex Connectors if the Federal Circuit were to remand the judgment for that purpose.  (Arlington I, Doc. 837).  However, this indicative ruling became moot on November 9, 2011, when the parties stipulated to the dismissal of the Duplex Connectors from the Arlington I matter. (Arlington I, Docs. 838, 839, 840).  The Federal Circuit affirmed the judgment in Arlington I on September 6, 2012. (Arlington I, Doc. 841).

On April 29, 2013, the parties stipulated to the dismissal of all claims of willful infringement in the above-captioned matter and to limit the damages period for infringement of Arlington's '050 and '831 patent by the Duplex Connectors.  (Docs. 422, 423).

On September 13, 2013, Arlington filed the instant motion for summary judgment of infringement on claim 8 of its '050 patent by the Duplex Connectors. (Doc. 429).  The motion is fully briefed and ripe for disposition.

## II.    Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The

burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

A party who "without authority makes, uses, offers to sell, or sells any patented invention" may be held liable to the patent owner for patent infringement. 35 U.S.C. § 271(a); see also 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."). "Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process,' which in turn necessitates a determination of 'what the words in the claim mean.'" Markman v. Westview Instruments, Inc., 517 U.S. 370, 374 (1996) (quoting H. SCHWARTZ, PATENT LAW AND PRACTICE 1, 80 (2d ed. 1995)). Thus, determining whether an accused device infringes a patented invention requires a two-step analysis. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1176-77 (Fed. Cir. 2002). First, the court must ascertain the proper construction of the patent's claims; this is a question of law. Markman, 517 U.S. at 384; Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998). In the second

9

step, the trier of fact must compare the allegedly infringing device with the properly

construed patent claim.  Research Plastics, Inc. v. Fed. Packaging Corp., 421 F.3d

1290, 1295 (Fed. Cir. 2005); Southwall Techs. v. Cardinal IG Co., 54 F.3d 1570, 1575

(Fed. Cir. 1995).

A patent claim is literally infringed when each limitation of the properly

construed claim is found in the accused device.  Jansen v. Rexall Sundown, Inc., 342

F.3d 1329, 1332 (Fed. Cir. 2003); Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,

289 F.3d 801, 812 (Fed. Cir. 2002).  Literal infringement is a question for the trier of

fact.  Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1302

(Fed. Cir. 2005); Bai v. L. & L. Wings, 160 F.3d 1350, 1353 (Fed. Cir. 1998).  Courts

may properly resolve literal infringement claims at the summary judgment stage

"when no genuine issue of material fact exists, in particular, when no reasonable

jury could find that every limitation recited in the properly construed claim either is

or is not found in the accused device."  Bai, 160 F.3d at 1353; see also Catalina, 289

F.3d at 812 ("Summary judgment of no literal infringement is proper when,

construing the facts in a manner most favorable to the nonmovant, no reasonable

jury could find that the accused system meets every limitation recited in the

properly construed claims.").  The Federal Circuit has cautioned district courts to

"approach a motion for summary judgment on the fact issue of infringement with

great care."  Cole v. Kimberly-Clark Corp., 102 F.3d 524, 528 (Fed. Cir. 1996).

In the instant matter, the first step in the infringement analysis is complete.

The disagreement at the heart of the parties' summary judgment motions concerns

step two of the inquiry: comparison of the accused products with Claim 8's properly construed limitations.  With one exception, the parties agree that the accused Duplex Connector products meet each of the limitations identified in Claim 8 of the '050 patent.  (Doc. 431 ¶ 7; Doc. 439 ¶ 7).  The sole disputed limitation concerns whether Bridgeport's Duplex Connectors contain "outwardly sprung members." (Id.)  The controlling construction of "outwardly sprung members" is "members bent outward at an angle relative to the normal plane of the adaptor."  (Doc. 431 ¶ 8; Doc. 439 ¶ 8).  The parties agree that the phrase "members" refers to the tensioning tangs on the adaptors of the Duplex Connectors.  (Doc. 431 ¶ 9; Doc. 439 ¶ 9).  In determining whether Bridgeport's Duplex Connectors infringe Claim 8 of the '050 patent, the relevant state of the connector for the infringement analysis is a connector that is fully assembled—a connector with the tensioning tang ring attached to the connector body.  (Id.)

The application of the "outwardly sprung members" limitation to the Duplex Connectors was the subject of cross-motions for summary judgment in Arlington I.  See Arlington I, 610 F. Supp. 2d 370 (M.D. Pa. 2009).  The court denied summary judgment of infringement for both the Single and Duplex Connectors because of three deficiencies with Arlington's evidence: (1) the failure to depict the "normal plane of the adaptor;" (2) the failure to provide angular measurements of the tensioning tangs in relation to the normal plane; and (3) the failure to provide measurements for each of the accused products.  Id. at 381-83.

When the parties proceeded to trial on the Single Connectors in <u>Arlington I</u>, Arlington's expert, Dr. Christopher Rahn ("Dr. Rahn") submitted supplemental trial expert reports and testified at trial.  The Rahn expert reports depicted the "normal plane of the adaptor," measured each Single and Duplex Connector model, and took linear measurements of the diameters of the tensioning tangs and the anchor tabs to determine the relative angle between them.  (Doc. 431 ¶ 10; Doc. 439 ¶ 10).  At trial, Dr. Rahn limited his testimony to the Single Connectors, but his methodology and results were the same for both types of connectors and consistent with the content of his expert reports.  (Arlington I, Doc. 660 at 15-207).  Dr. Rahn testified that the anchoring tabs on the connectors constitute "the normal plane of the adaptor."  (Id. at 77).  Dr. Rahn also demonstrated how the tensioning tangs are bent outward at an angle relative to the anchoring tabs.  (Id. at 84-99).  Dr. Rahn's measurements of the Single Connectors showed that the tensioning tangs of the Single Connectors are bent outward at an average angle of 1.4 degrees from the anchoring tabs.  (Id. at 98).

In response, Bridgeport's expert Dr. J. Brian P. Williamson testified that the normal plane of the adaptor is defined by the tensioning tangs, not the anchoring tabs.  (Arlington I, Doc. 661 at 289).  He determined that when the accused products are manufactured, the anchoring tabs are pulled inward out of the normal plane, while the tensioning tangs continue to remain in the normal plane.  (Id. at 224-225; Doc. 439 ¶ 10).  Dr. Williamson also critiqued Dr. Rahn's methodology and calculations on various grounds at trial.  (Arlington I, Doc. 661 at 265-68, 277-82).

The jury ultimately determined that all of the Single Connectors at issue infringe claim 8 of the '050 patent.

Bridgeport asserts that summary judgment is not warranted for the Duplex Connectors because the parties' experts continue to disagree about what constitutes the "normal plane of the adaptor" and whether the tensioning tangs are bent outward at an angle relative to the normal plane of the adaptor. (Doc. 438 at 16-28). Bridgeport further contends that Dr. Rahn's measurements and methodology are unreliable and subject to rejection by a jury. Bridgeport points to the court's previous denial of summary judgment in Arlington I and asserts that "there is no way to prognosticate how a jury in this case would weigh the *same evidence*." (Doc. 438 at 13 (emphasis added)).

Arlington contends that the jury verdict reached in Arlington I on the Single Connectors has collateral estoppel effects on the Duplex Connectors in the matter *sub judice*. Specifically, Arlington contends that because the jury found that Bridgeport's Single Connectors infringe claim 8 of the '050 patent, and therefore contain "outwardly sprung members," the jury necessarily determined that (1) the anchoring tabs constitute the normal plane of the adaptor; (2) the tensioning tangs are bent outward from that normal plane; and (3) the angles between the tangs and the normal plane were sufficient to meet the "bent outward" limitation. (Doc. 450 at 16). Arlington asserts that the parties have never distinguished between the Single and Duplex Connectors on these factual issues and indeed, submitted pre-

trial expert reports that presented a single argument on these issues for both the Single and Duplex Connectors.  (Id. at 20).

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'"  Montana v. United States, 440 U.S. 147, 153 (1979) (quoting Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49 (1897)).  Collateral estoppel, also referred to as issue preclusion,[4] specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment.  Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999).  By foreclosing subsequent disputes over issues on which a court has ruled, collateral estoppel promotes fairness and certainty, while preventing the wasteful expenditure of resources upon issues already resolved through adversarial proceedings.  See Allen v. McCurry, 449 U.S. 90, 94 (1980); Montana, 440 U.S. at 153-54; Witkowski, 173 F.3d at 198-99.

A finding of issue preclusion is appropriate when (1) "the issue sought to be precluded is the same as that involved in the prior action; (2) th[e] issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the

---

[4]  The terms "issue preclusion" and "collateral estoppel" are used interchangeably in modern jurisprudence.  See, e.g., Venuto v. Witco Corp., 117 F.3d 754, 758 n.5 (3d Cir. 1997).

determination was essential to the prior judgment." <u>Peloro v. United States</u>, 488 F.3d 163, 175 (3d Cir. 2007) (quoting <u>Burlington N. R.R. v. Hyundai Merch. Marine Co.</u>, 63 F.3d 1227, 1231-32 (3d Cir. 1995)).  The party seeking to invoke collateral estoppel bears the burden to prove each of its elements.  <u>Dici v. Pennsylvania</u>, 91 F.3d 542, 548 (3d Cir. 1996).

It is undisputable that application of the "outwardly sprung members" claim limitation to the Single Connectors was rigorously litigated and determined by a final and valid judgment, and that the determination of this issue was essential to that judgment.  Thus, the only element of collateral estoppel at issue in the case *sub judice* is the first: whether the application of the "outwardly sprung members" claim limitation in the '050 patent to the Duplex Connectors presents the same issues as the application of the "outwardly sprung members" claim limitation in the '050 patent to the Single Connectors in <u>Arlington I</u>.  To analyze the first prong, the court must examine whether "the same general legal rules govern both cases" and whether "the facts of both cases are indistinguishable as measured by those rules." <u>Suppan v. Dadonna</u>, 203 F.3d 228, 233 (3d Cir. 2000) (quoting WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 4425 at 253 (1981)).  The court must ask whether there is a "substantial overlap between the evidence or argument to be advanced" in each trial and whether the claims involved are closely related.  <u>Peloro</u>, 488 F.3d at 175 n.12 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. c (1982)).

Unsurprisingly, the court has been unable to identify any cases where litigation over the application of a patent claim's terms to an accused product was collaterally estopped due to the previous application of the same patent claim's terms to a similar accused product. The court presumes that the lack of factually similar case law is explained by this litigation's tortured procedural path. Ordinarily, similar accused products are tried in the same action.

Courts applying the doctrine of claim preclusion to *different* accused products invoke the doctrine only when there has been (1) a final judgment on the merits in a prior suit, (2) that involves the same parties or their privies, and (3) there is a subsequent suit based on the same cause of action. Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169, 172-73 (3d Cir. 2009). Federal Circuit case law dictates that "an infringement claim in a second suit is the 'same claim' as in an earlier infringement suit if the accused products in the two suits are 'essentially the same.'" Roche Palo Alto LLC v. Apotex, Inc., 531 F.3d 1372, 1379 (Fed. Cir. 2008) (internal citations omitted).[5] Accused products are "essentially the same" if their differences are merely "colorable" or "unrelated to the limitations in the claim of the patent." Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1324 (Fed. Cir. 2008). Issue preclusion does not always require the accused products to be identical, because "[i]t is the issues litigated, not the specific claims around which the issues

---

[5] The extent to which two infringement claims constitute the "same claim" is an issue particular to patent law, which necessitates application of Federal Circuit precedent. See Roche Palo Alto LLC v. Apotex, Inc., 531 F.3d 1372, 1379 (Fed. Cir. 2008).

were framed, that is determinative." Westwood Chem., Inc. v. United States, 525 F.2d 1367, 1372 (Ct. Cl. 1975) (examining the application of collateral estoppel to a non-litigated claim on the basis of claim invalidity).

The court agrees with Arlington that any disputes of material fact concerning the Duplex Connectors are foreclosed by the jury's verdict concerning the Single Connectors in Arlington I.  When a party seeks collateral estoppel based on a jury verdict, the court must determine "whether a rational jury could have grounded its verdict upon an issue other than" the issue sought to be precluded.  Schiro v. Farley, 510 U.S. 222, 233 (1994).  From a general verdict, the court may presume that the jury made implicit factual findings that would support that verdict.  See Power Integ., Inc. v. Fairchild Semicond. Int'l, Inc., 711 F.3d 1348, 1377 (Fed. Cir. 2013); see also Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1516 (Fed. Cir. 1984) ("[t]he general verdict thus includes the jury's legal conclusion and a set of implied fact findings, the latter being those necessary to support the legal conclusion encompassed in the verdict.").

In reaching its verdict that Bridgeport's Single Connectors infringed Arlington's '050 patent, the jury clearly determined that the Single Connectors had at least two "outwardly sprung members."  Thus, the jury could not have rationally grounded its verdict upon any other theory than Arlington and Dr. Rahn's theory that the anchoring tabs constitute the normal plane of the adaptor and that the tensioning tangs are bent outward from that plane.  The jury necessarily concluded

that the tensioning tangs were "outwardly sprung" from the normal plane of the adaptor.  No other interpretation of the jury's verdict is viable.

Bridgeport's tenuous contentions in the case *sub judice* concerning the normal plane of the adaptor and whether the tensioning tangs are bent outward from that plane are identical to those considered and discarded by the jury in Arlington I.  Indeed, Bridgeport even admits that "[t]hese are the same issues that gave rise to the trial in Arlington I."  (Doc. 438 at 6).  Moreover, all of Bridgeport's exhibits submitted in support of its opposition to Arlington's motion for summary judgment derive from or were submitted in conjunction with the proceedings in Arlington I.  (See Doc. 440).

There is absolutely no indication from the record that the structure of the Single and Duplex Connectors differ with respect to the "outwardly sprung

members" claim limitation.[6]  Indeed, prior to the Duplex Connectors' excision from

the trial in Arlington I, both parties submitted expert reports that made no

distinction between the Single and Duplex Connectors regarding this claim

limitation.  Using the same theories adopted by the jury in Arlington I,[7] Dr. Rahn

has measured 89 Duplex Connectors with 267 tensioning tangs.  (Doc. 431 ¶ 23; Doc.

439 ¶ 23).  Dr. Rahn concluded that all of the Duplex Connectors tested had

tensioning tangs bent outward at an angle relative to the anchoring tabs.  (Doc. 431

¶ 24; Doc. 439 ¶ 24).  Indeed, Dr. Rahn's measurements indicate that the tensioning

tangs of the Duplex Connectors are bent outward at an even wider angle–3.17

---

[6] Bridgeport's response (Doc. 439) is replete with references to Arlington's assertions in Arlington I that each product "is different and must be adjudicated on its own facts" and that the Single Connectors were "materially different from the duplex devices litigated" in this action.  (See, e.g., Doc. 439 ¶ 10 (citing Doc. 440-1, Ex. A at 13)).  As Bridgeport is well aware, the court must view these statements in proper context.  Arlington's assertions were raised in opposition to Bridgeport's motion for judgment as a matter of law.  In its motion, Bridgeport suggested that Judge Caputo's conflicting claim construction and entry of summary judgment in Bridgeport's favor in Arlington II precluded the jury's finding of infringement in Arlington I.  (See Arlington I, Docs. 647, 740).  Bridgeport now alleges that the court "accepted Arlington's argument" when it determined that Bridgeport failed to prove that the Duplex Connectors were "essentially the same" as the Single Connectors found to infringe the '050 Patent.  (See, e.g., Doc. 439 ¶ 10).  Bridgeport's argument is meritless.  The court did not make *any* factual finding concerning whether the Single Connectors and the Duplex Connectors were "essentially the same" products for the purposes of claim preclusion.  See Arlington I, 692 F. Supp. 2d 487, 503 (M.D. Pa. 2010).  To the contrary, the court simply held that Bridgeport had made an insufficient evidentiary showing to warrant claim preclusion.  Id.  The court notes with interest that Bridgeport risks being "hoisted by its own petard" in that it previously argued (unsuccessfully) in Arlington I that the accused products are "essentially the same."  (See Arlington I, Doc. 689 at 16-19).

[7] Thus, Bridgeport has already had the opportunity to cross-examine Dr. Rahn concerning this methodology and his measurements.

degrees–from the anchoring tabs than the Single Connectors.  (Doc. 431 ¶ 26; Doc. 439 ¶ 26).

Conducting a trial to determine whether the Duplex Connectors infringe Arlington's '050 patent would involve identical arguments and witnesses to those presented in <u>Arlington I</u>.  Indeed, the accused products are virtually identical with respect to the remaining issues.  Moreover, the case *sub judice* is the veritable poster child for the necessity of the collateral estoppel doctrine.  The only reason that the Duplex Connectors were not already adjudged infringing by the jury in <u>Arlington I</u> is because of Arlington's prophylactic litigation strategy of pursuing identical claims in two separate actions and the parties' failure to apprise the court of the res judicata implications of such a strategy until the eve of trial.  This case, along with <u>Arlington I</u>, has been marred by significant delay for years, due in part to the complexity of the issues involved, but also due to the protracted intransigence of the parties on a variety of issues.  Granting summary judgment of infringement in Arlington's favor based on collateral estoppel not only comports with the legal requirements for such a doctrine, but also promotes fairness and judicial economy.

For all of these reasons, the court concludes that Bridgeport is estopped from relitigating its arguments concerning the "outwardly sprung members" claim limitation,[8] and Arlington is entitled to summary judgment.

**IV.    Conclusion**

For the foregoing reasons, the court will grant Arlington's motion (Doc. 429) for summary judgment of infringement.  An appropriate order follows.


                                   /S/ CHRISTOPHER C. CONNER
                                   Christopher C. Conner, Chief Judge
                                   United States District Court
                                   Middle District of Pennsylvania

Dated:        April 24, 2014


---

[8] Even if collateral estoppel does not apply, Bridgeport continues to misapprehend the relevant condition of the connector from which liability is determined.  Dr. Williamson's measurements and ultimate conclusions are based on the evolving state of the connector prior to assembly and after disassembly.  (See, e.g., Doc. 440-7, Ex. G; Doc. 440-9, Ex. I).  However, the "outwardly sprung members" claim construction must be construed with a fully-assembled connector. (Doc. 431 ¶ 9; Doc. 439 ¶ 9).