**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:06-CV-1105** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Presently before the court is Arlington Industries, Inc.'s ("Arlington") motion (Doc. 483) to dismiss with prejudice claims related to United States Patent Number 6,521,831 ("the '831 patent"): Counts I and III of the second amended complaint (Doc. 102). Additionally before the court is Bridgeport Fittings, Inc.'s ("Bridgeport") motion (Doc. 486) to lift the stay and for summary judgment on Counts I and III of the second amended complaint, wherein Bridgeport seeks an award of litigation costs pursuant to Federal Rule of Civil Procedure 54(d)(1). FED. R. CIV. P. 54(d)(1). For the reasons that follow, the court will grant Arlington's motion (Doc. 483) to dismiss with prejudice and deny Bridgeport's motion (Doc. 486) for summary judgment and costs.

## I. Factual Background & Procedural History

Arlington and Bridgeport are fierce competitors in the electrical conduit fitting industry. This case concerns a particular type of electrical conduit fitting with a snap-in feature. Litigation between the parties over patents underlying this type of fitting has been ongoing since 2001. See Arlington Indus., Inc. v. Bridgeport

Fittings, Inc., Civ.A.No. 3:01-CV-0485 (M.D. Pa.) (hereinafter "Arlington I"). The Arlington I litigation, instituted in 2001, originally concerned only Bridgeport's Single Connector snap-in products. Bridgeport's Duplex Connector fittings entered the dispute in 2006, with the commencement of the above-captioned case (hereinafter "Arlington II"). (Doc. 3). The Duplex Connectors later became a part of Arlington I during the discovery phase of that litigation. Unbeknownst to the Honorable A. Richard Caputo, who initially oversaw the above-captioned case,[1] and the undersigned, who presided over the Arlington I litigation, the parties litigated identical claims regarding the Duplex Connectors in the two cases. Through oversight or inadvertence, neither party found it necessary to seek immediate consolidation, and this matter and Arlington I proceeded on parallel tracks. Suffice it to say that the procedural path leading to the motions *sub judice* has been rather complicated.

**A. The Contested Patents**

In 1992, Arlington developed and manufactured a new type of electrical conduit fitting, intended to replace previous units whose installation required the use of two hands to screw the device into an electrical junction box.[2] (See Doc. 102, Ex. B). On December 15, 1992, Arlington acquired United States Patent Number 5,171,164 ("the '164 patent"), which covered the design of this device. (Arlington I, Doc. 404 ¶ 2; Doc. 432 ¶ 2). The following year, Arlington secured United States

[1] Judge Caputo transferred the case to the undersigned on June 24, 2011. (Doc. 368).

[2] An electrical junction box is used to run multiple conductors in two or more directions, allowing power to flow simultaneously to various electrical devices.

Patent Number 5,266,050 ("the '050 patent"). (Doc. 102, Ex. B). The '050 patent was a "continuation patent," meaning that it shared a common specification with the '164 patent, but included different claims. (Arlington I, Doc. 404 ¶ 2; Doc. 432 ¶ 2).

In 1999, Bridgeport introduced its own product line of quick-connect fittings called the "Snap-In Fitting." (See Arlington I, Doc. 170 at 7-10). Certain characteristics of the Snap-In Fittings were nearly identical to those featured in Arlington's patented products. (See Arlington I, Doc. 310 ¶ 2.5). Arlington filed the Arlington I litigation in March 2001, alleging that the Snap-In Fittings infringed both the '164 and the '050 patents. (See Arlington I, Doc. 1).

In September 2005, Bridgeport designed a new type of quick-connect electrical fitting, which it called the "Whipper-Snap." (Arlington I, Doc. 404 ¶ 14; Doc. 432 ¶ 14). Bridgeport subsequently initiated an action requesting a declaratory judgment that its Whipper-Snap fittings did not infringe the '050 patent. (See Arlington I, Doc. 584). In an order dated April 6, 2006, the court consolidated Bridgeport's declaratory judgment action with Arlington I. (Arlington I, Doc. 267).

On February 18, 2003, Arlington acquired the '831 patent for a type of two-wire, or duplex, electrical fitting. (Doc. 114 ¶ 2; Doc. 154 ¶ 2; Doc. 328 at 3). On May 31, 2006, Arlington filed the instant litigation alleging that Bridgeport's Duplex Connectors—two products in the Whipper-Snap product line—infringed the '831 patent. (See Doc. 1). By amended complaint dated June 27, 2006, Arlington asserted a second claim against the Duplex Connectors, alleging that they infringed the '050 patent. (See Doc. 3). This claim also became a part of Arlington I during discovery. From that point forward, the parties litigated the same

issue—infringement of the '050 patent by the Duplex Connectors—in both Arlington I and Arlington II.

**B. Protracted Litigation**

On December 4, 2007, Judge Caputo issued his Markman claim construction ruling on the '050 patent. (Doc. 98). Nearly three months later, on February 25, 2008, the Arlington I court issued its Markman ruling in which it construed certain terms of the '050 patent in a manner materially different from the construction issued by Judge Caputo. (Arlington I, Doc. 376). The parties filed motions for summary judgment in each case. (Arlington I, Docs. 382, 385; Arlington II, Docs. 110, 112, 113). On September 18, 2008, Judge Caputo granted Bridgeport's motions for summary judgment in the above-captioned case, concluding that Arlington could not prove infringement of the '050 patent by Bridgeport's Duplex Connectors. (Doc. 307). However, on February 4, 2009, the Arlington I court denied the parties' cross-motions for summary judgment on the issue of infringement and set trial for September 2009. (See Arlington I, Docs. 471, 474).

Days before trial, Bridgeport filed a motion to stay the trial in Arlington I on claim and issue preclusion grounds as a result of Judge Caputo's judgment of non-infringement of the Duplex Connectors in the above-captioned case. (Arlington I, Doc. 561). The undersigned denied the motion, but excised the Duplex Connectors from trial to circumvent the issue preclusion conundrum stemming from conflicting claim constructions. (Arlington I, Doc. 584). A jury returned a verdict in favor of Arlington, finding that thirty of Bridgeport's Single Connector products infringed the '050 patent. (Arlington I, Doc. 632).

After the trial, Bridgeport filed a motion for renewed judgment as a matter of law and for a new trial, alleging in part that res judicata barred the jury's verdict concerning the Single Connectors.  See Arlington I, 692 F. Supp. 2d 487, 498-503 (M.D. Pa. 2010).  The court found that Judge Caputo's claim construction in Arlington II could be entitled to issue preclusive effect, but the court declined to apply the doctrine because "relitigation ha[d] already occurred" and Bridgeport delayed in presenting the issue until "the eve of a complex trial with witnesses, advocates, and the court assembled at significant expense."  Id. at 502.  The court also found that claim preclusion did not apply because Bridgeport failed to establish that the Single Connectors adjudged infringing at trial were "essentially the same" device as the Duplex Connectors adjudged non-infringing in Arlington II pursuant to Judge Caputo's claim construction.  Id. at 503.

Bridgeport also filed a motion to alter or amend the judgment in Arlington I, requesting in part that the court enter final judgment with respect to the Duplex Connectors.  (See Arlington I, Doc. 774).  The Arlington I court found that, based on Judge Caputo's judgment of non-infringement of the Duplex Connectors in the above-captioned case, Bridgeport was entitled to judgment of non-infringement as a matter of law on the Duplex Connectors.  (Id.)

The parties appealed both cases to the United States Court of Appeals for the Federal Circuit.  On January 20, 2011, the Federal Circuit issued its opinion with respect to the above-captioned matter.  See Arlington II, 632 F.3d 1246 (Fed. Cir. 2011).  Therein, the Federal Circuit vacated the grant of summary judgment of

non-infringement of the '050 and '831 patents by the Duplex Connectors due to an erroneous claim construction in Arlington II. Id. The mandate issued on April 21, 2011. (Doc. 365). Judge Caputo subsequently re-opened the above-captioned matter on June 24, 2011 and re-assigned the case to the undersigned for all further proceedings. (Doc. 368). On July 18, 2011, the court granted Arlington's motion for a preliminary injunction, enjoining Bridgeport from directly or indirectly making, using, selling, offering to sell or importing, or causing or inducing others to make, use, sell, offer to sell or import the Duplex Connectors. (Doc. 392). That preliminary injunction dissolved on December 4, 2011, when the '050 patent expired.

Following the Federal Circuit's decision in the above-captioned matter, the parties stipulated to the dismissal of the Duplex Connectors from the Arlington I matter. (Arlington I, Docs. 838, 839, 840). The Federal Circuit affirmed the judgment in Arlington I on September 6, 2012, bringing the litigation to its conclusion. (Arlington I, Doc. 841). The proceedings in Arlington II continued. On April 4, 2014, the court granted Arlington's motion for summary judgment of infringement, relying on collateral estoppel in holding that the Duplex Connectors were essentially the same as the Single Connectors and thus infringed the '050 patent. (Doc. 458). Arlington's related motion for summary judgment of damages is currently pending. (Doc. 465).

**C. Reexamination of the '831 Patent**

Subsequent to the commencement of Arlington II, Bridgeport filed a petition with the United States Patent & Trademark Office ("PTO") seeking *inter partes*

reexamination of the '831 patent. (See Docs. 139, 142). The PTO granted Bridgeport's request on April 13, 2007. (See Docs. 139, 142). On February 7, 2008, Arlington moved to stay all claims in Arlington II pending completion of the reexamination, pursuant to 35 U.S.C. § 318.[3] (Docs. 138, 139). Bridgeport opposed the motion, arguing that a delay in the proceedings would cause Bridgeport undue prejudice. (Doc. 142). On June 27, 2008, Judge Caputo stayed the litigation with respect to the '831 patent only. (Doc. 257). On February 12, 2009, as PTO reexamination proceedings continued, the court lifted the stay and entered summary judgment in Bridgeport's favor on all claims pertaining to the '831 patent. (Docs. 325, 328). Thereafter, the Federal Circuit vacated the court's final judgment of non-infringement and remanded for further proceedings. (Doc. 365).

On August 14, 2009, after completing *inter partes* reexamination, the PTO rejected Claim 1 of the '831 patent, which formed the basis of Arlington's infringement allegations against Bridgeport's Duplex Connectors. (Doc. 427 at 3). Arlington appealed the adverse ruling to the Board of Patent Appeals and Inferences ("BPAI"). The BPAI affirmed the PTO's findings on December 16, 2011. (Id.) Arlington subsequently appealed the BPAI's decision to the Federal Circuit. (Id.)

---

[3] Under the statutory language then in effect, "Once an order for *inter partes* reexamination of a patent has been issued . . . , the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice." 35 U.S.C. § 318 (amended 2012).

On September 12, 2013, the court granted Arlington's motion to stay the litigation with respect to the '831 patent pending Federal Circuit review of the contested reexamination findings. (Docs. 426, 427, 428). On August 29, 2014, the Federal Circuit affirmed the PTO's rejection of Claim 1 of the '831 patent, rendering the claim cancelled. Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 581 F. App'x 859 (Fed. Cir. 2014). Shortly thereafter, Arlington filed the instant motion (Doc. 483) to dismiss the claims related to the '831 patent with prejudice. Bridgeport countered by moving (Doc. 486) to lift the stay on said claims and for summary judgment and litigation costs. The motions are fully briefed and ripe for disposition.

## II. Legal Standard

### A. Rule 41(a)(2) Dismissal

Under Federal Rule of Civil Procedure 41(a)(2), a plaintiff may dismiss a claim after the defendant has filed an answer or a motion for summary judgment only by order of the court, "on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). Whether to grant or deny a Rule 41(a)(2) motion lies within the sound discretion of the district court. See Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir. 1974); Dodge-Regupol, Inc. v. RB Rubber Prods., Inc., 585 F. Supp. 2d 645, 652 (M.D. Pa. 2008). The main purpose of the requirement of court approval is to prevent voluntary dismissals which unfairly affect the rights of the defendant. See 27A FED. PROC., L. ED. § 62:509 (collecting cases from First, Fifth, Eighth, Tenth, and Eleventh Circuits); see also *In re* Paoli R.R. Yard PCB Litig., 916 F.2d 829, 863 (3d Cir. 1990) (holding that Rule 41 motions should be granted unless the defendant will

suffer significant prejudice). Consequently, courts addressing 41(a)(2) motions to dismiss with prejudice have held that such requests should generally be granted. See, e.g., Smoot v. Fox, 340 F.2d 301, 302-03 (6th Cir. 1964) (holding that the district court abused its discretion by denying plaintiff's motion to dismiss with prejudice); TQP Dev., LLC v. Branch Banking & Trust Co., No. 2:12-CV-55-JRG-RSP, 2014 WL 4749073, at *2 (E.D. Tex. Sept. 22, 2014) ("A voluntary motion to dismiss with prejudice under Rule 41(a)(2) is very rarely denied."); Sypniewski v. Warren Hills Reg'l Bd. of Educ., No. CIV.01-3061, 2006 WL 208562, at *4 (D.N.J. Jan. 26, 2006) ("[A] motion for voluntary dismissal with prejudice eliminates [the court's] discretion to deny such a motion."); Protocomm Corp. v. Novell, Inc., 171 F. Supp. 2d 459, 471 (E.D. Pa. 2001) (noting that denial of a motion to dismiss with prejudice may be an abuse of discretion); Sheridan v. Fox, 531 F. Supp. 151, 155 (E.D. Pa. 1982) (same); cf. Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc., No. CIV.A.97-7430, 1999 WL 675469, at *2 (E.D. Pa. Aug. 31, 1999) ("Granting a voluntary dismissal with prejudice in effect grants judgment in favor of defendant at the request of the plaintiff; defendants are in the same position they would have been in had the trial occurred, except they save the additional costs of litigation."); John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186, 188 (E.D. Pa. 1982) ("[T]he dismissal of Evans' case with prejudice will give Majik-Ironers the basic relief which it seeks, i.e., a final determination of the controversy in its favor and freedom from the possibility of further suit by the plaintiff and its privies on the same cause of action.").

**B. Rule 54(d)(1) Costs**

Federal Rule of Civil Procedure 54(d)(1) creates a strong presumption that costs are to be awarded to the prevailing party. FED. R. CIV. P. 54(d)(1); see *In re* Paoli R.R. Yard PCB Litig., 221 F.3d 449, 462 (3d Cir. 2000). Under Federal Circuit precedent,[4] "there can only be one prevailing party in a [patent] case." Shum v. Intel Corp., 629 F.3d 1360, 1367 (Fed. Cir. 2010); see SSL Servs., LLC v. Citrix Sys., Inc., 769 F.3d 1073, 1087 (Fed. Cir. 2014). Compare Shum, 629 F.3d at 1367 ("A court must choose one, and only one, 'prevailing party' to receive any costs award."), with *In re* Paoli, 221 F.3d at 469 ("The general rule in this circuit and others is that a district court, in exercising its equitable discretion, may apportion costs . . . as it sees fit."). The prevailing party must receive some relief on the merits which "materially alter[s] the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." Shum, 629 F.3d at 1367 (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)); see Inland Steel Co. v. LTV Steel Co., 364 F.3d 1318, 1320 (Fed. Cir. 2004). However, a party is not required to prevail on all claims to qualify. See Shum, 629 F.3d at 1368; Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1347-48 (Fed. Cir. 2006). Once the prevailing party has been determined, the court exercises its discretion in deciding how much to award in costs, if any. See Manildra, 76 F.3d

---

[4] Whether a litigant in a patent case is the prevailing party is governed by the law of the Federal Circuit. See Power Mosfet Techs, L.L.C. v. Siemens AG, 378 F.3d 1396, 1416 (Fed. Cir. 2004); Manildra Mill Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1182 (Fed. Cir. 1996); Corsage Collection, Inc. v. GN Diamond, LLC, No. CIV.A.06-382, 2011 WL 1532369, at *3 (E.D. Pa. Mar. 23, 2011), report and recommendation adopted, 2011 WL 1532361 (Apr. 21, 2011).

at 1183 (deferring to regional circuit law); Croker v. Boeing Co., 662 F.2d 975, 998 (3d Cir. 1981) ("Costs . . . are awarded to a prevailing party as a matter of course, unless the district court directs otherwise.").

## III. Discussion

### A. Rule 41(a)(2) Dismissal

The cancellation of patent claims by the PTO has a binding effect on pending district court litigation. Fresenius USA, Inc. v. Baxter Int'l, Inc., 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a [patent] claim is cancelled, the patentee loses any cause of action based upon that claim, and any pending litigation in which the claims are asserted becomes moot."); Slip Track Sys., Inc. v. Metal Lite, Inc., 195 F.3d 1337, 1340 (Fed. Cir. 1998) (holding that cancellation during reexamination extinguishes parallel causes of action stayed in district court); cf. Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)."). The Federal Circuit has established that dismissal is an appropriate procedural mechanism by which to dispose of litigation rendered moot by reexamination proceedings. See, e.g., Fresenius, 721 F.3d at 1347 (remanding with instructions to dismiss in light of PTO cancellation); Slip Track, 195 F.3d at 1340 ("[T]he reexamination . . . is likely to result in the cancellation of all of the claims of the Brady patent. . . . [which] in turn will require a dismissal."); see also SurfCast, Inc. v. Microsoft Corp., No. 2:12-CV-333-JDL, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014) (citing Federal Circuit case law for the proposition that PTO cancellation during reexamination necessitates dismissal of related district court claims); Baseball Quick, LLC v. MLB

Advanced Media L.P., No. 11.CIV.1735KBF, 2013 WL 5597185, at *1 (S.D.N.Y. Oct. 9, 2013) (same). But cf. Fortel Corp. v. Phone-Mate, Inc., 825 F.2d 1577, 1581 (Fed. Cir. 1987) (affirming the district court's grant of summary judgment following invalidation of a contested patent upon reexamination); *In re* Laughlin Prods., Inc., 265 F. Supp. 2d 525, 536 (E.D. Pa. 2003) (noting in *dicta* that summary judgment may be suitable following cancellation by the PTO). When granted with prejudice, such a dismissal is tantamount to an adjudication on the merits in favor of the defendant. See Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1035 (Fed. Cir. 2006); Power Mosfet, 378 F.3d at 1416; Inland Steel, 364 F.3d at 1320.

In the instant matter, the Federal Circuit affirmed the PTO's reexamination findings on August 29, 2014, cancelling Claim 1 of the '831 patent. Arlington, 581 F. App'x 859. Accordingly, the parties agree that the stay in place on Counts I and III of the second amended complaint should be lifted, as both counts pertain to Claim 1 of the '831 patent. (Doc. 488 at 5 n.3). The disagreement at the heart of the parties' motions concerns the proper disposition of said claims. Arlington seeks dismissal with prejudice pursuant to Rule 41(a)(2), arguing that such a result is procedurally appropriate. (Doc. 507 at 3-6). Arlington further avers that Bridgeport will suffer no legal prejudice as a consequence of dismissal with prejudice. (Doc. 484 at 7-8; Doc. 507 at 9-11). Bridgeport responds that dismissal would indeed cause it substantial prejudice, "depriv[ing] Bridgeport of the judgment to which it is entitled under Rule 56" after defending against Arlington's "meritless claims." (Doc. 492 at 11, 15).

Conversely, Bridgeport initially seeks entry of summary judgment of invalidity and non-infringement on Counts I and III. (Doc. 488 at 6). In its reply brief, Bridgeport modifies its motion, maintaining its request for summary judgment on Counts I and III but rescinding its request for judgment of invalidity. (Doc. 517 at 10). In support of its motion, Bridgeport argues that it "has a right to a favorable judgment because it prevailed in reexamination." (Id. at 9). Arlington counters that dismissal with prejudice will lead to an equally favorable result for Bridgeport: judgment on the merits with no possibility of re-litigation. (Doc. 534 at 2).

As a threshold matter, it is indisputable that the August 29, 2014 Federal Circuit decision affirming the PTO's reexamination, Arlington, 581 F. App'x 859, rendered Counts I and III of the second amended complaint moot. See Fresenius, 721 F.3d at 1340; Slip Track, 195 F.3d at 1340. Subsequently, each party posits that the procedural mechanism it proposes at this juncture is, exclusively and without exception, the manner in which the court must proceed. In so doing, the parties cling to selective quotation and ultimately fail to demonstrate the preeminence of their respective positions. However, in view of Federal Circuit precedent, the court is satisfied that Arlington's Rule 41(a)(2) motion to dismiss with prejudice is an appropriate procedural vehicle by which to foreclose Counts I and III. See Fresenius, 721 F.3d at 1347; Slip Track, 195 F.3d at 1340. Furthermore, the court notes that, although Rule 41 permits the exercise of judicial discretion, it is well-established that a plaintiff's motion to dismiss with prejudice should only be denied if the defendant would suffer significant prejudice as a result. See

*In re* Paoli, 916 F.2d at 863; Protocomm, 171 F. Supp. 2d at 471. The court's analysis thus proceeds to Bridgeport's claim that it will suffer substantial harm if the court grants Arlington's motion to dismiss.[5]

Bridgeport avers that after eight years of extensive litigation, wherein Arlington "doggedly pressed its claims" concerning the '831 patent, Arlington should not be allowed to "avoid entry of an adverse judgment." (Doc. 492 at 9). Bridgeport further contends that Arlington will likely misuse a favorable ruling on the instant motions to support its ongoing "publicity campaign to smear Bridgeport, . . . . allowing the baseless '831 [p]atent claims . . . to remain uncorrected." (Id. at 11-12). In response, Arlington asserts that Bridgeport's arguments are inapposite given the context of the instant motion. (Doc. 507 at 1). Arlington argues, "Bridgeport will obtain all the relief to which it is entitled on Arlington's claim[s]—not only the final determination of the controversy in its favor, but also freedom from the possibility of further suit from Arlington on the same cause of action." (Id.) Specifically, Arlington avers that, contrary to Bridgeport's assertions, Arlington minimized the parties' litigation costs by moving to stay proceedings pending reexamination of the '831 patent. (Id. at 9-10 n.4). Arlington also notes that Bridgeport opposed Arlington's motions to stay, preferring instead to litigate throughout the duration of *inter partes* review. (Id. at 10).

[5] Bridgeport supports its averments primarily by citing to cases in which the plaintiff either moved the court to dismiss *without* prejudice or failed to address the issue altogether. (Doc. 492 at 7-15). Despite this misplaced reliance, the court considers Bridgeport's arguments under the proper standard governing a Rule 41(a)(2) motion to dismiss with prejudice, as set forth *supra*.

Ultimately, the court finds Bridgeport's arguments unavailing. Bridgeport fails to provide any cogent explanation for its fundamental contention—that dismissal with prejudice will cause Bridgeport significant harm whereas entry of summary judgment will not. As noted by Arlington, Bridgeport will receive final adjudication on the merits in its favor via either procedural path. (See Doc. 507 at 1). In sum, Bridgeport's averments fall far short of challenging Arlington's Rule 41(a)(2) motion to dismiss with prejudice.

In light of the foregoing, the court concludes that dismissal with prejudice of the claims concerning the '831 patent will not cause Bridgeport to suffer significant prejudice. Accordingly, the court will grant Arlington's motion to dismiss Counts I and III of the second amended complaint with prejudice, and it will deny Bridgeport's motion for summary judgment.

**B. Rule 54(d)(1) Costs**

As noted *supra*, in the context of patent litigation, only one party may be eligible for an award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1). FED. R. CIV. P. 54(d)(1); see Shum, 629 F.3d at 1367. The court's task when analyzing which litigant qualifies as the sole prevailing party is to examine the parties' respective successes throughout the suit. See SSL Servs., 769 F.3d at 1087; Shum, 629 F.3d at 1368. For purposes of this analysis, success is defined as "relief on the merits which alters . . . the legal relationship of the parties." Inland Steel, 364 F.3d at 1320; see SSL Servs., 769 F.3d at 1087; Shum, 629 F.3d at 1367. The Federal Circuit has held that favorable reexamination findings by the PTO which compel the dismissal of parallel district court claims have sufficient judicial

imprimatur to constitute such success. See Inland Steel, 364 F.3d at 1320; Manildra, 76 F.3d at 1183.

The Federal Circuit has considered several mixed judgment cases, wherein both parties have prevailed on certain claims at issue. In Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., plaintiff Kemin Foods prevailed on only one of two patent infringement claims, each involving a different patent; obtained damages and a permanent injunction as a result; and successfully defended against counterclaims of invalidity and unenforceability. 464 F.3d at 1347. The Federal Circuit affirmed the district court's designation of Kemin Foods as the prevailing party. Id. Additionally, in SSL Services, LLC v. Citrix Systems, Inc., plaintiff SSL Services obtained a jury verdict of infringement on one of two patents and an award of $15 million in damages. 769 F.3d at 1081. The district court denied SSL Services prevailing party status, noting that "both parties achieved some success and sustained some failure." Id. at 1086. On appeal, the Federal Circuit reversed and remanded; the court explained that SSL Services' successes—judgment of infringement on one patent and an award of damages—outweighed defendant Citrix's judgment of non-infringement on a separate patent. Id. at 1087. Viewed thusly, the essential inquiry in mixed judgment cases is whether one party's successes surpass the other's with respect to the "central issue[s]" in the suit. Shum, 629 F.3d at 1368.

In the case *sub judice*, Bridgeport avers that it is entitled to an award of costs incurred while litigating the '831 patent claims. (Doc. 488 at 8-9; Doc. 517 at 11-13). Bridgeport explains that it "is not asking the court to hold that it is the prevailing

party in this litigation, but rather that it is the prevailing party with respect to Counts I and III." (Doc. 517 at 11).  Bridgeport erroneously relies on case law from the United States Court of Appeals for the Third Circuit in support of its contention that the court may apportion litigation costs between the parties based upon their respective successes.  (Id. at 12).  Bridgeport also asserts that because the Federal Circuit awarded Bridgeport its costs in connection with the reexamination appeal, "[i]t would be incongruous for this [c]ourt to deny Bridgeport its costs." (Doc. 492 at 16-17).

Arlington responds to Bridgeport's assertions by highlighting Federal Circuit precedent, which, as previously discussed, limits the litigation to only one prevailing party.  (Doc. 510 at 14-16).  Arlington contends that it is the sole prevailing party with respect to all claims in the suit, arguing that "Bridgeport has not prevailed on a single claim in this district court litigation." (Id. at 15).  Consequently, Arlington urges the court to "dismiss the instant action with prejudice and without the award of costs." (Doc. 507 at 16).

In view of the foregoing, we must return to the issue of whether Bridgeport qualifies as the prevailing party in the matter *sub judice*, making it eligible for an award of costs under Rule 54(d)(1).  FED. R. CIV. P. 54(d)(1).  It is clear to the court that both Arlington and Bridgeport have garnered various successes over the course of this action.  Hence, the court is tasked with determining whether Bridgeport's successes surpass Arlington's with respect to the central issues in the litigation.  See Shum, 629 F.3d at 1368.

The parties' dispute derives from Arlington's claims that Bridgeport's Duplex Connectors infringed the '050 patent and the '831 patent. (Doc. 102). Arlington's successes in this matter include: (1) a preliminary injunction enjoining Bridgeport from making, using, selling, offering to sell, or importing Duplex Connectors between the dates of July 18, 2011 and December 4, 2011, (Doc. 392); and (2) entry of summary judgment of infringement of the '050 patent by the Duplex Connectors. (Doc. 458). Arlington's related motion for summary judgment of damages is currently pending. (Doc. 465). Separately, Bridgeport's success in this action stems from the claims disputed herein: the cancellation of Claim 1 of the '831 patent and the resulting dismissal with prejudice of Counts I and III of the second amended complaint. See Inland Steel, 364 F.3d at 1320; Manildra, 76 F.3d at 1183. In each of these favorable outcomes, the respective successful party undoubtedly obtained "relief on the merits which alter[ed] . . . the legal relationship of the parties." Inland Steel, 364 F.3d at 1320; see SSL Servs., 769 F.3d at 1087; Shum, 629 F.3d at 1367. Importantly, each party has obtained judgment in its favor on one of the two contested patents.

Given the respective successes of the parties, and in light of Federal Circuit precedent, at this stage of the litigation the court finds that Bridgeport does not qualify as the prevailing party. At most, the instant judgment in Bridgeport's favor on the '831 patent claims moves Bridgeport closer to Arlington in terms of relative success. Arlington previously obtained both a preliminary injunction and summary judgment on the '050 patent claim, and it is presently pursuing damages. See

Kemin, 464 F.3d at 1347; SSL Servs., 769 F.3d at 1087. Without more, Bridgeport cannot secure the title of prevailing party.

Finally, to the extent Bridgeport asserts that the court should apportion costs between the parties, (Doc. 517 at 11), the law forecloses its claim. See Shum, 629 F.3d at 1367 ("A court must choose one, and only one, 'prevailing party' to receive any costs award."). The pertinent inquiry is not whether Bridgeport prevailed with respect to Counts I and III, but rather whether Bridgeport is the prevailing party in the litigation.[6] The court therefore concludes that Bridgeport's motion for costs related to Counts I and III of the second amended complaint will be denied.

[6] Bridgeport contends that because it "was forced to incur significant costs relating to fact and expert discovery, claim construction, and motion practice" and "[g]iven the facts and equities of the case, the court should exercise its discretion and award Bridgeport costs on Counts I and III, or find that apportionment of costs between the parties is appropriate." (Doc. 517 at 12). However, as Bridgeport is well aware, the only reason the Duplex Connectors were not adjudged infringing of the '050 patent in Arlington I is because of Bridgeport's failure to apprise the court of the parallel proceedings in Arlington I and Arlington II until the eve of trial. If the '050 patent claims had been adjudicated in Arlington I as originally intended, the above-captioned matter would concern only '831 patent claims and Bridgeport would likely qualify as the prevailing party. Thus, given Bridgeport's prophylactic litigation strategy in Arlington I and the significant costs and delay born therefrom, the court declines to consider Bridgeport's request.

## IV. Conclusion

For all of the foregoing reasons, the court will grant Arlington's motion (Doc. 483) to dismiss with prejudice and deny Bridgeport's motion (Doc. 486) for summary judgment and costs. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: March 31, 2015