IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | CIVIL ACTION NO. 3:06-CV-1105 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| Defendant | : | |

## MEMORANDUM

Arlington Industries, Inc. ("Arlington") files the instant motion (Doc. 545) for attorney fees and litigation expenses pursuant to 35 U.S.C. § 285. Arlington seeks exceptional case designation following an acrimonious patent infringement dispute with Bridgeport Fittings, Inc. ("Bridgeport") spanning two fatefully intertwined litigations. Resolution of the pending motion closes the curtain on this protracted controversy once and for all. Following fifteen years of litigation, Arlington and Bridgeport have battled *usque ad finem*; denouement is long overdue.

I.   **Factual Background & Procedural History**

Arlington and Bridgeport are fierce competitors in the electrical conduit fitting industry. This case concerns a particular type of fitting with a snap-in feature. Litigation between the parties over patents underlying this type of fitting has been ongoing since 2001. See Arlington Indus., Inc. v. Bridgeport Fittings, Inc., No. 3:01-CV-0485 (M.D. Pa.) ("Arlington I"). The Arlington I action, instituted in 2001, originally concerned only Bridgeport's Single Connector snap-in products. Bridgeport's Duplex Connector fittings entered the dispute in 2006, with the

commencement of the above-captioned case ("Arlington II"). (Doc. 1). The Duplex Connectors later became a part of Arlington I during the discovery phase of that litigation. Unbeknownst to the Honorable A. Richard Caputo, who initially oversaw the above-captioned action, and the undersigned, who presided over Arlington I, the parties litigated identical claims regarding the Duplex Connectors in the two cases. Through oversight or inadvertence, neither party found it necessary to seek immediate consolidation, and this matter and Arlington I proceeded on parallel tracks. Suffice it to say that the procedural path leading to the motion *sub judice* has been rather tortured.

### A. Contested Patents

In 1992, Arlington developed and manufactured a new type of electrical conduit fitting, intended to replace previous units whose installation required the use of two hands to screw the device into an electrical junction box.[1] (See Doc. 102, Ex. B). This fitting features a circular spring metal adaptor, to which at least two outwardly sprung members are attached at the trailing end. (See id. at col. 10). When the adaptor is inserted into the knockout hole of an electrical junction box, its outwardly sprung members lock the adaptor into place. (See id.) This feature allows a user to quickly connect the device to a junction box using only one hand, reducing the time and effort required for installation. (See id. at col. 1).

Arlington acquired United States Patent Number 5,171,164 ("the '164 patent") for its newly-designed connector in 1992. (Arlington I, Doc. 404 ¶ 2;

---

[1] An electrical junction box is used to run multiple conductors in two or more directions, allowing power to flow simultaneously to various electrical devices.

Doc. 432 ¶ 2). The following year, Arlington secured United States Patent Number 5,266,050 ("the '050 patent"). (Doc. 102, Ex. B). The '050 patent is a "continuation patent," meaning that it shares a common specification with the '164 patent, but includes different claims. (Arlington I, Doc. 404 ¶ 2; Doc. 432 ¶ 2). In 2003, Arlington acquired United States Patent Number 6,521,831 ("the '831 patent") for a similarly fashioned two-wire, or duplex, electrical conduit fitting. (Doc. 114 ¶ 2; Doc. 154 ¶ 2; Doc. 328 at 3).

**B.    Bridgeport's Connectors**

In 1999, Bridgeport introduced its own product line of quick-connect fittings called Snap-In Fittings. (See Arlington I, Doc. 170 at 7-10). Certain characteristics of the Snap-In Fittings are nearly identical to those featured in Arlington's connectors. (See id.) Arlington commenced the Arlington I litigation in March 2001, alleging that the Snap-In Fittings infringed both the '164 and the '050 patents. (See Arlington I, Doc. 1).

In September 2005, Bridgeport designed a new type of quick-connect fitting called the Whipper-Snap. (See Arlington I, Doc. 404 ¶ 14; Doc. 432 ¶ 14). Bridgeport subsequently filed an action requesting a declaratory judgment that its Whipper-Snap fittings did not infringe the '050 patent. (See Arlington I, Docs. 267, 584). By order dated April 6, 2006, the court consolidated Bridgeport's declaratory judgment action with Arlington I. (Arlington I, Doc. 267).

Arlington initiated Arlington II in May 2006, alleging that Bridgeport's Duplex Connectors—a constituent of the Whipper-Snap line of fittings—infringed the '831 patent. (Doc. 1). In response, Bridgeport filed a petition with the United

States Patent & Trademark Office ("PTO") seeking *inter partes* reexamination of the '831 patent. (See Docs. 139, 142). The PTO granted Bridgeport's request and commenced its review shortly thereafter. (See Docs. 139, 142).

By amended complaint, Arlington asserted a second claim against the Duplex Connectors in the above-captioned action, contending that they infringed the '050 patent. (Doc. 3). This claim also became a part of Arlington I during discovery. From that point forward, the parties litigated this same claim in both Arlington I and Arlington II.

### C.  Protracted Litigation

In December 2007, Judge Caputo issued his Markman claim construction ruling on the '050 patent in Arlington II. (Doc. 98). Nearly three months later, the Arlington I court issued its Markman ruling in which it construed certain terms of the '050 patent in a manner materially different from the construction issued by Judge Caputo. (Arlington I, Doc. 376). The parties filed motions for summary judgment in each case. (Arlington I, Docs. 382, 385; Arlington II, Docs. 110, 112, 113). In September 2008, Judge Caputo granted Bridgeport's motions for summary judgment, concluding that Arlington could not prove infringement of the '050 patent or the '831 patent by Bridgeport's Duplex Connectors. (Doc. 307). However, in February 2009, the Arlington I court denied the parties' cross-motions for summary judgment on the issue of infringement and set trial for September 2009. (See Arlington I, Docs. 471, 474).

Days before trial in Arlington I, Bridgeport filed a motion to stay on claim and issue preclusion grounds, citing Judge Caputo's judgment of non-infringement

of the Duplex Connectors in Arlington II. (Arlington I, Doc. 561). The undersigned denied the motion, but excised the Duplex Connectors from trial to circumvent the issue preclusion conundrum stemming from conflicting claim constructions. (Arlington I, Doc. 584). A jury returned a verdict in favor of Arlington, finding that thirty of Bridgeport's Single Connector products infringed the '050 patent. (Arlington I, Doc. 632). The jury awarded Arlington lost profits damages and determined that Arlington was entitled to a reasonable royalty rate of 12%. (Id.)

Subsequent to trial, Bridgeport filed a motion for renewed judgment as a matter of law and for a new trial, alleging in part that res judicata barred the jury's verdict concerning the Single Connectors. See Arlington I, 692 F. Supp. 2d 487, 498-503 (M.D. Pa. 2010). The court found that Judge Caputo's claim construction in Arlington II could be entitled to issue preclusive effect, but declined to apply the doctrine because "relitigation ha[d] already occurred" and Bridgeport delayed in presenting the issue until "the eve of a complex trial with witnesses, advocates, and the court assembled at significant expense." Id. at 502. The court further found that claim preclusion did not apply because Bridgeport failed to establish that the Single Connectors adjudged infringing at trial were "essentially the same" device as the Duplex Connectors adjudged non-infringing in Arlington II. Id. at 503.

Bridgeport also filed a motion to alter or amend the judgment in Arlington I, requesting in part that the court enter final judgment as to the Duplex Connectors. (Arlington I, Doc. 648). The Arlington I court held that, based on Judge Caputo's judgment of non-infringement in the above-captioned case, Bridgeport was entitled

5

to judgment of non-infringement as a matter of law on the Duplex Connectors. (<u>Arlington I</u>, Doc. 774).

The parties appealed both cases to the United States Court of Appeals for the Federal Circuit.  In January 2011, the Federal Circuit issued its opinion with respect to the above-captioned matter.  <u>Arlington II</u>, 632 F.3d 1246 (Fed. Cir. 2011). Therein, the Federal Circuit vacated summary judgment of non-infringement of the '050 and '831 patents by the Duplex Connectors, due to an erroneous claim construction ruling on the '050 patent.  <u>Id.</u>  The mandate issued on April 21, 2011. (Doc. 365).  Judge Caputo re-opened <u>Arlington II</u> on June 24, 2011 and re-assigned the case to the undersigned for all further proceedings.  (Doc. 368).  On July 18, 2011, the court granted Arlington's motion for a preliminary injunction, enjoining Bridgeport from making, using, selling, offering to sell or importing the Duplex Connectors.  (Doc. 392).  That preliminary injunction dissolved on December 4, 2011, when the '050 patent expired.  (<u>See</u> <u>id.</u> at 10).

Following the Federal Circuit's decision in the above-captioned matter, the parties stipulated to the dismissal of the Duplex Connectors from <u>Arlington I</u>. (<u>Arlington I</u>, Docs. 838, 839, 840).  In September 2012, the Federal Circuit affirmed the judgment in <u>Arlington I</u>.  (<u>Arlington I</u>, Doc. 841).  Arlington then sought supplemental damages for Single Connector sales made by Bridgeport prior to the expiration of the '050 patent.  (<u>Arlington I</u>, Doc. 845).  The <u>Arlington I</u> court held that Arlington was entitled to lost profits damages for this period, bringing the litigation to its conclusion.  (<u>Arlington I</u>, Docs. 887, 891).

6

The proceedings in Arlington II continued.  The court granted Arlington's motion (Doc. 429) for summary judgment of infringement in April 2014, relying on collateral estoppel to hold that the Duplex Connectors infringed the '050 patent.  (Doc. 458).  In August 2014, the Federal Circuit affirmed an adverse *inter partes* reexamination ruling issued by the PTO, which invalidated the '831 patent for purposes of the matter *sub judice*.  Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 581 F. App'x 859 (Fed. Cir. 2014).  The court thereafter granted Arlington's motion (Doc. 483) to dismiss its claims related to the '831 patent with prejudice.  (Doc. 537).  Finally, in May 2015, the court granted Arlington's Rule 56 motion (Doc. 465) for damages arising from Bridgeport's Duplex Connector sales, estopping Bridgeport from re-litigating its lost profits and reasonable royalty arguments raised in Arlington I.  (Doc. 539).

Arlington filed the instant motion (Doc. 545) for attorney fees and litigation expenses on June 5, 2015.  The motion is fully briefed and ripe for disposition.

## II.  **Legal Standard**

The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court recently defined an exceptional case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).  This formulation broadened the prevailing standard, which hitherto cabined a patent litigant's eligibility for attorney fees to certain delineated

7

circumstances.  Id. (citing Brooks Furniture Mfg. v. Dutailier Int'l Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)).  A district court must exercise "equitable discretion" and consider the totality of the circumstances when determining whether a case is exceptional, bearing in mind "frivolousness, motivation, objective unreasonableness[,] . . . and the need . . . to advance considerations of compensation and deterrence."  Id. at 1756 & n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).  It is the burden of the moving party to prove their entitlement to fees by a preponderance of the evidence.  Id. at 1758.

### III. Discussion

#### A. Attorney Fees

The gravamen of Arlington's supplication is that the 2011 Federal Circuit decision which invalidated Judge Caputo's claim construction marked the veritable resolution of the instant matter.  (See Doc. 549 at 1; Doc. 565 at 1, 15).  Arlington asserts that Bridgeport prolonged the action thereafter by pursuing meritless defenses and re-raising disallowed arguments *ad infinitum*.  (Doc. 549 at 1-3, 14-19; Doc. 565 at 7-13).  Arlington further contends that Bridgeport misrepresented its case to the court and engaged in calculated discovery misconduct.  (Doc. 549 at 2-3, 19-20; Doc. 565 at 17-21).  Specifically, Arlington posits that Bridgeport rendered this case exceptional by: (1) opposing Arlington's motion for preliminary injunctive relief; (2) opposing Arlington's motion for summary judgment of infringement; (3) opposing Arlington's motion for summary judgment of damages; (4) representing to the court in a September 2013 status report that "significant issues regarding damages" remained; (5) representing to the court in a May 2014 status report

that "[t]he issue of damages for the New Damages Period had never been litigated . . . with respect to the Duplex Connectors;" and (6) producing 4500 non-searchable documents approximately one week before a period of scheduled depositions. (Doc. 549 at 12-21; Doc. 565 at 7-13, 17-21). Bridgeport ripostes that Arlington's accusations are unfounded in light of the extraordinary procedural complexities undergirding this case. (Doc. 559 at 1, 14-22). The court will first address Arlington's enumerated arguments *seriatim*. The court will then analyze Arlington's request for attorney fees by considering the totality of the circumstances.

   1.   *Preliminary Injunctive Relief*

In July 2011, Arlington petitioned the court to enjoin Bridgeport from making, using, selling, offering to sell, or importing Duplex Connectors for the duration of the '050 patent. (Doc. 369). Bridgeport predicated its opposition on defenses raised in Arlington I: *first*, it disputed Arlington's construal of the "outwardly sprung members" limitation of Claim 8 of the '050 patent; *second*, it challenged the methodology employed by Arlington's expert, Dr. Christopher Rahn ("Dr. Rahn"); and *third*, it asserted that additional competitors occupied the electrical conduit fitting market. (Doc. 378 at 11-17). The court granted Arlington's request for injunctive relief, finding that Arlington was likely to succeed on the merits because Bridgeport failed to raise a substantial question regarding infringement. (Doc. 392 at 11-17). The court additionally concluded that Arlington would suffer irreparable harm due to the existence of a two-supplier market. (Id. at 17-21).

In the instant motion, Arlington accuses Bridgeport of "employ[ing] [an] . . . objectively unreasonable litigation strategy in opposition to Arlington's preliminary injunction motion," (Doc. 549 at 14-15), and asserts that Bridgeport's position "lacked any substantive strength." (Doc. 565 at 9). Bridgeport responds by directing the court's attention to the relevant case chronology; significantly, the Federal Circuit had not yet affirmed the judgment in Arlington I. (Doc. 559 at 15; see Arlington I, Doc. 841). Bridgeport further defends its counteroffensive by highlighting the substantive overlap between its contentions set forth therein and its then-pending arguments on appeal before the Federal Circuit. (See id.) The court is compelled to agree with Bridgeport.

Indeed, in addressing a post-trial motion filed by Bridgeport in Arlington I, the undersigned observed that "in light of the very unique circumstances present in this case, there is no doubt that Bridgeport has a reasonable probability of success on appeal." (Arlington I, Doc. 776 at 12). Bridgeport focused its opposition to preliminary injunctive relief on three contested issues from the antecedent litigation: the presence of outwardly sprung members, the accuracy of Dr. Rahn's methodology, and the existence of a two-supplier market. (See Doc. 378 at 11-17). It is clear that Bridgeport's decision to re-assert previously raised defenses had the potential to yield positive results. Moreover, regardless of the outcome of Bridgeport's pending appeal, it remained to be seen whether the Duplex Connectors aligned with the Single Connectors on disputed subjects. Placed in context, the court finds that Bridgeport's arguments were far from meritless, and its litigation tactics were reasonable.

10

### 2. *Summary Judgment of Infringement*

Arlington moved for summary judgment of infringement in September 2013, urging that the jury verdict reached in Arlington I had collateral estoppel effects on the Duplex Connectors. (Doc. 429). In response, Bridgeport argued that the issues previously litigated and determined in Arlington I were distinguishable from the matters contested in Arlington II and that genuine disputes of material fact necessitated a trial by jury. (Doc. 438 at 1-2). Bridgeport underscored the divergent views espoused by the parties' experts as to whether the Duplex Connectors contained "outwardly sprung members." (Id. at 12-24). Applying collateral estoppel, the court granted summary judgment in Arlington's favor. (Doc. 458).

Arlington presently charges that Bridgeport erred by "raising iterations of the same non-infringement arguments now rejected both in Arlington I and at the preliminary injunction hearing in Arlington II," noting that its motion came after the Federal Circuit's affirmance in Arlington I. (Doc. 549 at 16-17). *Per contra*, Bridgeport asserts that "Arlington's motion raised open questions of law," chief among them: the applicability of collateral estoppel. (Doc. 559 at 16). The court is persuaded by Bridgeport's position.

A party seeking to invoke collateral estoppel bears the burden of proving each of its elements. Dici v. Pennsylvania, 91 F.3d 542, 548 (3d Cir. 1996). The singular element contested by Bridgeport queries whether "the issue sought to be precluded is the same as that involved in the prior action." (Doc. 458 at 14 (quoting Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007)). To meet its burden, Arlington endeavored to establish that the "outwardly sprung members" claim

11

limitation in the '050 patent presented the same issues with respect to the Single Connectors and the Duplex Connectors. (Id. at 15). After reviewing the extensive Rule 56 record, the court determined that the jury in Arlington I necessarily grounded its verdict in Dr. Rahn's theory of infringement—that the Single Connector "tensioning tangs are bent at an outward angle relative to the anchor tabs"—and rejected a conflicting theory advanced by Bridgeport's expert. (Id. at 12, 17-18). The court found "absolutely no indication from the record that the structure of the Single and Duplex Connectors differ with respect to the 'outwardly sprung members' claim limitation." (Id. at 18-19).

Notwithstanding its conclusive defeat, Bridgeport compelled Arlington to prove the preclusive effect of the judgment rendered in Arlington I. Additionally, the court observes that in Arlington I, Bridgeport's claims for non-infringement survived summary judgment as well as Arlington's motion for a directed verdict; thus, Bridgeport's defenses were not baseless in the first instance. See, e.g., Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1370 (Fed. Cir. 2004). Bridgeport repurposed these defenses to meet the novel issue preclusion challenge levied by Arlington's Rule 56 motion. Given the inveterate complexity of the case *sub judice*, the court is satisfied that Bridgeport's advocacy was reasonably based upon colorable, non-frivolous arguments. Exceptional case designation on this basis is inappropriate.

### 3.   *Summary Judgment of Damages*

In September 2014, Arlington filed a motion for summary judgment of damages predicated on issue preclusion. (Doc. 465). Bridgeport vehemently

discountenanced the application of collateral estoppel; specifically, Bridgeport submitted that neither lost profits nor reasonable royalties were actually litigated in Arlington I as to the Duplex Connectors and that the court's preliminary injunction findings of fact were not entitled to preclusive effect. (Doc. 475 at 6-14). Bridgeport asserted that summary judgment was inappropriate because "the parties and their experts disagree[d] regarding the facts, methodology, and analysis for calculating damages." (Doc. 536 at 12). The court ultimately held that Arlington met its burden of establishing each element of issue preclusion and entered judgment in Arlington's favor. (Docs. 539, 540, 568).

Reiterating its exceptionality arguments detailed *supra*, Arlington posits that "Bridgeport's opposition to summary judgment of damages . . . lacked any substantive strength, as it consisted entirely of evidence and arguments previously rejected." (Doc. 565 at 12). In rejoinder, Bridgeport contends that until the court decided the motion, the intersection between issues pertaining to damages in Arlington I and Arlington II was not yet conclusively established. (Doc. 559 at 17). Bridgeport's response on this point is equally cogent.

The court relied substantially on submissions from the parties' experts to conclude that the jury in Arlington I weighed and decided the same issues underlying Arlington's claims for damages in Arlington II. (Doc. 539 at 21-30). Between the two cases, both experts proffered parallel opinions with respect to product demand, the presence of non-infringing substitutes in the marketplace, and calculation of reasonable royalties. (Id.) At Arlington's supplication, the court also granted preclusive effect to the findings of fact laid out in its preliminary injunction

opinion. (Id. at 21 n.11). Specifically, the court incorporated its prior conclusions concerning lost profits damages, to wit: that the sale of over 40 million of Arlington's duplex snap-in products evidenced market demand; and that Arlington and Bridgeport occupied a two-supplier market with respect to duplex snap-in connectors. (Id. at 21 n.11, 22-24).

In sum, Bridgeport refused Arlington's invitation to stipulate to damages and instead challenged Arlington to prove collateral estoppel for the second time in this case. Arlington's task thereupon was novel, as the issues relevant to damages are wholly separate from those comprised by Arlington's penultimate motion for summary judgment of infringement. In view of the labyrinthine facts and myriad procedural intricacies, and the unsettled nature of the governing law, Bridgeport's litigation strategy was reasonable.

    **4.**    *Status Reports*

Arlington next charges Bridgeport with inflating the strength of its case for the purpose of "entangl[ing] Arlington in full blown discovery" on damages. (Doc. 549 at 19). According to Arlington, "[d]espite knowing it had no new defenses to damages, Bridgeport on multiple occasions represented the opposite to the Court." (Id.) Arlington points the court to two status reports, dated September 6, 2013 and May 12, 2014, wherein Bridgeport represents respectively that "significant issues regarding damages" remain and that "[t]he issue of damages for the New Damages Period ha[s] never been litigated . . . with respect to the Duplex Connectors." (Id.; Doc. 565 at 17-20; see Doc. 426 at 5; Doc. 548-11 at 4). Bridgeport rejoins that its

14

...

statements were accurate and submits that Arlington fails to demonstrate otherwise. (Doc. 559 at 19-20).

Arlington's contentions are unavailing. The alleged misrepresentations in Bridgeport's status reports are merely forecasts, tendered to inform the court of Bridgeport's discovery desiderata. The court divines no deception in Bridgeport's cited statements. Indeed, Bridgeport requested the discovery timelines proposed therein to prepare for Arlington's forthcoming motion for summary judgment on damages, discussed *supra*.

Laid bare, Arlington simply argues that the legitimacy of Bridgeport's former litigation stance is belied by its ultimate Rule 56 demise. To be sure, the fact of Arlington's eventual success is of no moment to the court's evaluation of Bridgeport's manner and style of defense for purposes of the instant inquiry. See SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing Octane, 134 S. Ct. at 1756). Arlington's challenge misses the mark entirely.

   5.   *Discovery Conduct*

Arlington and Bridgeport engaged in supplemental fact discovery on damages between September 2013 and December 2013. (See Doc. 428). The court set a discovery deadline for December 16, 2013, which the parties extended to December 20, 2013. (Id. ¶ 3; Doc. 444 ¶ 1). Bridgeport produced 4500 non-searchable electronic documents on December 7, 2013, having provided Arlington with only 50 documents theretofore. (Doc. 549 at 9-10; Doc. 565 at 20-21; see Doc. 548-9).

Arlington contends that Bridgeport misled Arlington's counsel by representing on November 27, 2013 that Bridgeport's production was "substantially complete." (Doc. 549 at 9; see Doc. 548-4). Arlington repines that "Bridgeport's unreasonable last minute document dump . . . caused a significant (and unnecessary) burden on Arlington's small team of attorneys, who were forced to review, categorize, and organize Bridgeport's [4500] non-searchable documents while simultaneously defending, and preparing to take, depositions, in an unreasonably short time." (Doc. 549 at 10). Bridgeport explains the episode as an "honest oversight" which its counsel endeavored to remedy post haste. (Doc. 559 at 21). Further, Bridgeport observes that "there was never an ESI agreement or court order regarding any requisite format for document production." (Doc. 561 ¶ 37).

Bridgeport's voluminous discovery production on the eve of numerous depositions is unfortunate. The mishap purportedly placed Arlington in a difficult position and may have been preventable with the exercise of greater vigilance by counsel. Bridgeport's apparent solecism does not, however, rise to the level of unreasonable litigation. Arlington provides the court with no evidence that Bridgeport's behavior was premeditated. Neither does Arlington claim that Bridgeport neglected a discovery deadline or produced noncompliant electronic documents. Further, as far as the court is aware, this was an isolated incident. Arlington's tenuous assertions do not support a finding of exceptional case status.

      6. *Totality of the Circumstances*

The court must consider the totality of the circumstances in determining whether to deem the instant case exceptional. See Octane, 134 S. Ct. at 1756.

16

Arlington's request for attorney fees hinges largely on its postulation that "Bridgeport's relitigation litigation strategy was 'exceptionally meritless . . . sufficiently set[ting] [this case] apart from mine-run cases to be exceptional.' " (Doc. 549 at 22 (quoting Octane, 134 S. Ct. at 1751)). As elucidated above, the court rejects Arlington's relitigation accusations *in extenso*. The court also finds that Arlington's charges of misconduct—that Bridgeport misrepresented its case to the court and engaged in duplicitous discovery practice—are unavailing. Arlington's various and sundry claims do not militate in favor of an exceptional case designation.

The cases Arlington cites in support of exceptionality are factually distinct from the matter *sub judice*; Arlington's selective quotations ignore crucial context. For example, Arlington cites extensively to Chicago Board Options Exchange, Inc. v. Securities Exchange, LLC, No. 07C623, 2014 WL 6978644 (N.D. Ill. Dec. 10, 2014), for the proposition that relitigation subsequent to a relevant Federal Circuit ruling is categorically unreasonable. (See Doc. 565 at 4-5, 10, 13-15). The plaintiff in Chicago Board Options Exchange repeatedly advocated its preferred claim construction in pre-trial motion practice, ignoring an inconsistent Federal Circuit ruling in that case. See Chi. Bd. Options Exch., 2014 WL 6978644, at *3-5. In designating the litigation exceptional, the district court found that plaintiff "must have understood, after the first decision on appeal, that it could not prove infringement." Id. at *5. Arlington's comparison overlooks key distinctions between Chicago Board Options Exchange and the case at bar; the instant inquiry is hardly so black and white. Of principal significance, manifold Federal Circuit

rulings from two separate actions have charted the course of this litigation. Bridgeport's resolve to test the ambit of said rulings was reasonable given the *sui generis* circumstances.

The court additionally observes that Bridgeport has prevailed on certain claims and cooperated with Arlington on numerous occasions.  Most notably, Bridgeport successfully pursued *inter partes* reexamination of the '831 patent before the United States Patent & Trademark Office ("PTO").  (See Docs. 139, 142). The PTO rejected Claim 1 of the '831 patent, which formed the basis of Arlington's infringement allegations against Bridgeport's Duplex Connectors.  (Doc. 427 at 3). The Federal Circuit affirmed the PTO, and the court subsequently dismissed Arlington's claims related to the '831 patent from this action.  (Doc. 537).  Further, Bridgeport and Arlington entered various stipulations and joint motions over the course of Arlington I and Arlington II, in each instance avoiding unnecessary expense and delay.  (See Docs. 50, 444, 463, 566; Arlington I, Docs. 413, 704, 838-39, 890).  The foregoing considerations weigh against an award of fees.

Lastly, the court's analysis is informed by the parties' collective responsibility for the claim and issue preclusion problems which have tethered this action to Arlington I.  It is fair to state that, as Arlington underscores (see Doc. 549 at 1-12), Bridgeport's motion for a stay on the eve of trial in Arlington I was one of many tendrils of encircling opportunistic advocacy.  (See Arlington I, Docs. 561-62, 582). However, as the Arlington I court observed in denying Bridgeport's motion, it was incumbent upon both parties to move for consolidation when identical claims arose in each case.  (See Arlington I, Doc. 582 at 4-6).  Remaining quiescent as the parallel

claim construction ensued, neither litigant timely advised the court in Arlington I to the potentially binding effect of Judge Caputo's Markman ruling in the above-captioned action.  (See id. at 6).  Hence, Bridgeport's pre-trial stratagem does not expunge the fact of Arlington's indiscretion.  An award of fees under such circumstances would do little to "advance considerations of compensation and deterrence."  Octane, 134 S. Ct. at 1756 n.6; see Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc., 790 F.3d 1369, 1373 & n.5 (Fed. Cir. 2015) (citing Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1415 (Fed. Cir. 2004)).

The court concludes that Arlington has failed to show by a preponderance of the evidence that Bridgeport's litigation positions stand out with respect to the substantive weakness of its arguments, or that Bridgeport litigated in an unreasonable manner.  See Octane, 134 S. Ct. at 1756, 1758.  *In toto*, Bridgeport's aggressive advocacy does not render the instant litigation exceptional.  Accordingly, Arlington will not receive attorney fees.

**B.      Litigation Expenses**

Arlington additionally requests the court to exercise its "inherent authority to impose sanctions in the form of reasonable expert fees . . . to make Arlington whole for the injuries it suffered due to Bridgeport's conduct."  (Doc. 549 at 22-23).  Arlington tenders no further examples of Bridgeport's alleged misconduct.  Applying the court's foregoing ratiocination concerning attorney fees, the court is presented with no basis for imposing sanctions on Bridgeport.  The court will summarily deny Arlington's petition for litigation expenses.

**IV.    Conclusion**

Arlington's motion (Doc. 545) for attorney fees and litigation expenses will be denied.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     March 17, 2016