### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:06-CV-1105** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Arlington Industries, Inc. ("Arlington") files the instant motion (Doc. 572) for reconsideration of the court's memorandum and order (Docs. 570, 571) denying Arlington's motion (Doc. 545) for attorney fees and litigation expenses. Arlington contends that the court's memorandum is based on clear errors of fact and law and will effect manifest injustice. (See Docs. 573, 579). The motion will be denied.

## I.    Factual Background & Procedural History

Arlington and Bridgeport are competitors in the electrical conduit fitting industry. This case concerns a particular type of fitting with a snap-in feature. Litigation between the parties over patents underlying this type of fitting has been ongoing since 2001. See Arlington Indus., Inc. v. Bridgeport Fittings, Inc., No. 3:01-CV-0485 (M.D. Pa.) ("Arlington I"). The Arlington I action, instituted in 2001, originally concerned only Bridgeport's Single Connector snap-in products. Bridgeport's Duplex Connector fittings entered the dispute in 2006, with the commencement of the above-captioned case ("Arlington II"). (Doc. 1). The Duplex Connectors later became a part of Arlington I during the discovery phase of that

litigation.  Unbeknownst to the Honorable A. Richard Caputo, who initially oversaw the above-captioned action, and the undersigned, who presided over <u>Arlington I</u>, the parties litigated identical claims regarding the Duplex Connectors in the two cases.  Through oversight or inadvertence, neither party sought consolidation, and this matter and <u>Arlington I</u> proceeded on parallel tracks.

A.     **Contested Patents**

In 1992, Arlington developed and manufactured a new type of electrical conduit fitting, intended to replace previous units whose installation required the use of two hands to screw the device into an electrical junction box.[1]  (<u>See</u> Doc. 102, Ex. B).  This fitting features a circular spring metal adaptor, to which at least two outwardly sprung members are attached at the trailing end.  (<u>See</u> <u>id.</u> at col. 10).  When the adaptor is inserted into the knockout hole of an electrical junction box, its outwardly sprung members lock the adaptor into place.  (<u>See</u> <u>id.</u>)  This feature allows a user to quickly connect the device to a junction box using only one hand, reducing the time and effort required for installation.  (<u>See</u> <u>id.</u> at col. 1).

Arlington acquired United States Patent Number 5,171,164 ("the '164 patent") for its newly-designed connector in 1992.  (<u>Arlington I</u>, Doc. 404 ¶ 2; Doc. 432 ¶ 2).  The following year, Arlington secured United States Patent Number 5,266,050 ("the '050 patent").  (Doc. 102, Ex. B).  The '050 patent is a "continuation patent," meaning that it shares a common specification with the '164 patent, but includes different claims.  (<u>Arlington I</u>, Doc. 404 ¶ 2; Doc. 432 ¶ 2).  In 2003,

---

[1] An electrical junction box is used to run multiple conductors in two or more directions, allowing power to flow simultaneously to various electrical devices.

Arlington acquired United States Patent Number 6,521,831 ("the '831 patent") for a similarly fashioned two-wire, or duplex, electrical conduit fitting.  (Doc. 114 ¶ 2; Doc. 154 ¶ 2; Doc. 328 at 3).

### B.    Bridgeport's Connectors

In 1999, Bridgeport introduced its own product line of quick-connect fittings called Snap-In Fittings.  (See Arlington I, Doc. 170 at 7-10).  Certain characteristics of the Snap-In Fittings are nearly identical to those featured in Arlington's connectors.  (See id.)  Arlington commenced the Arlington I litigation in March 2001, alleging that the Snap-In Fittings infringed both the '164 and the '050 patents. (See Arlington I, Doc. 1).

In September 2005, Bridgeport designed a new type of quick-connect fitting called the Whipper-Snap.  (See Arlington I, Doc. 404 ¶ 14; Doc. 432 ¶ 14).  Bridgeport subsequently filed an action requesting a declaratory judgment that its Whipper-Snap fittings did not infringe the '050 patent.  (See Arlington I, Docs. 267, 584).  By order dated April 6, 2006, the court consolidated Bridgeport's declaratory judgment action with Arlington I.  (Arlington I, Doc. 267).

Arlington initiated Arlington II in May 2006, alleging that Bridgeport's Duplex Connectors—a constituent of the Whipper-Snap line of fittings—infringed the '831 patent.  (Doc. 1).  In response, Bridgeport filed a petition with the United States Patent & Trademark Office ("PTO") seeking *inter partes* reexamination of the '831 patent.  (See Docs. 139, 142).  The PTO granted Bridgeport's request and commenced its review shortly thereafter.  (See Docs. 139, 142).

By amended complaint, Arlington asserted a second claim against the Duplex Connectors in the above-captioned action, contending that they infringed the '050 patent. (Doc. 3). This claim also became a part of <u>Arlington I</u> during discovery. From that point forward, the parties litigated the same claim in both <u>Arlington I</u> and <u>Arlington II</u>.

### C.      Protracted Litigation

In December 2007, Judge Caputo issued his <u>Markman</u> claim construction ruling on the '050 patent in <u>Arlington II</u>. (Doc. 98). Nearly three months later, the <u>Arlington I</u> court issued its <u>Markman</u> ruling in which it construed certain terms of the '050 patent in a manner materially different from the construction issued by Judge Caputo. (<u>Arlington I</u>, Doc. 376). The parties filed motions for summary judgment in each case. (<u>Arlington I</u>, Docs. 382, 385; <u>Arlington II</u>, Docs. 110, 112, 113). In September 2008, Judge Caputo granted Bridgeport's motions for summary judgment, concluding that Arlington could not prove infringement of the '050 patent or the '831 patent by Bridgeport's Duplex Connectors. (Doc. 307). However, in February 2009, the <u>Arlington I</u> court denied the parties' cross-motions for summary judgment on the issue of infringement and set trial for September 2009. (<u>See</u> <u>Arlington I</u>, Docs. 471, 474).

Days before trial in <u>Arlington I</u>, Bridgeport filed a motion to stay on claim and issue preclusion grounds, citing Judge Caputo's judgment of non-infringement of the Duplex Connectors in <u>Arlington II</u>. (<u>Arlington I</u>, Doc. 561). The undersigned denied the motion, but excised the Duplex Connectors from trial to circumvent the issue preclusion conundrum stemming from conflicting claim constructions.

4

(<u>Arlington I</u>, Doc. 584).  A jury returned a verdict in favor of Arlington, finding that thirty of Bridgeport's Single Connector products infringed the '050 patent. (<u>Arlington I</u>, Doc. 632).  The jury awarded Arlington lost profits damages and determined that Arlington was entitled to a reasonable royalty rate of 12%.  (<u>Id.</u>)

Subsequent to trial, Bridgeport filed a motion for renewed judgment as a matter of law and for a new trial, alleging in part that res judicata barred the jury's verdict concerning the Single Connectors.  <u>See</u> <u>Arlington I</u>, 692 F. Supp. 2d 487, 498-503 (M.D. Pa. 2010).  The court found that Judge Caputo's claim construction in <u>Arlington II</u> could be entitled to issue preclusive effect, but declined to apply the doctrine because "relitigation ha[d] already occurred" and Bridgeport delayed in presenting the issue until "the eve of a complex trial with witnesses, advocates, and the court assembled at significant expense." <u>Id.</u> at 502.  The court further found that claim preclusion did not apply because Bridgeport failed to establish that the Single Connectors adjudged infringing at trial were "essentially the same" device as the Duplex Connectors adjudged non-infringing in <u>Arlington II</u>. <u>Id.</u> at 503.

Bridgeport also filed a motion to alter or amend the judgment in <u>Arlington I</u>, requesting in part that the court enter final judgment as to the Duplex Connectors. (<u>Arlington I</u>, Doc. 648).  The <u>Arlington I</u> court held that, based on Judge Caputo's judgment of non-infringement in the above-captioned case, Bridgeport was entitled to judgment of non-infringement as a matter of law on the Duplex Connectors. (<u>Arlington I</u>, Doc. 774).

The parties appealed both cases to the United States Court of Appeals for the Federal Circuit.  In January 2011, the Federal Circuit issued its opinion with respect

5

to the above-captioned matter. <u>Arlington II</u>, 632 F.3d 1246 (Fed. Cir. 2011).
Therein, the Federal Circuit vacated summary judgment of non-infringement of the
'050 and '831 patents by the Duplex Connectors, due to an erroneous claim
construction ruling on the '050 patent. <u>Id.</u> The mandate issued on April 21, 2011.
(Doc. 365). Judge Caputo re-opened <u>Arlington II</u> on June 24, 2011 and re-assigned
the case to the undersigned for all further proceedings. (Doc. 368). On July 18,
2011, the court granted Arlington's motion for a preliminary injunction, enjoining
Bridgeport from making, using, selling, offering to sell or importing the Duplex
Connectors. (Doc. 392). That preliminary injunction dissolved on December 4,
2011, when the '050 patent expired. (<u>See</u> <u>id.</u> at 10).

Following the Federal Circuit's decision in the above-captioned matter, the
parties stipulated to the dismissal of the Duplex Connectors from <u>Arlington I</u>.
(<u>Arlington I</u>, Docs. 838, 839, 840). In September 2012, the Federal Circuit affirmed
the judgment in <u>Arlington I</u>. (<u>Arlington I</u>, Doc. 841). Arlington then sought
supplemental damages for Single Connector sales made by Bridgeport prior to the
expiration of the '050 patent. (<u>Arlington I</u>, Doc. 845). The <u>Arlington I</u> court held
that Arlington was entitled to lost profits damages for this period, bringing the
litigation to its conclusion. (<u>Arlington I</u>, Docs. 887, 891).

The proceedings in <u>Arlington II</u> continued. The court granted Arlington's
motion (Doc. 429) for summary judgment of infringement in April 2014, relying on
collateral estoppel to hold that the Duplex Connectors infringed the '050 patent.
(Doc. 458). In August 2014, the Federal Circuit affirmed an adverse *inter partes*
reexamination ruling issued by the PTO, which invalidated the '831 patent for

purposes of the matter *sub judice*.   <u>Arlington Indus., Inc. v. Bridgeport Fittings, Inc.</u>, 581 F. App'x 859 (Fed. Cir. 2014).   The court thereafter granted Arlington's motion (Doc. 483) to dismiss its claims related to the '831 patent with prejudice.   (Doc. 537). Finally, in May 2015, the court granted Arlington's Rule 56 motion (Doc. 465) for damages arising from Bridgeport's Duplex Connector sales, estopping Bridgeport from re-litigating its lost profits and reasonable royalty arguments raised in <u>Arlington I</u>.  (Doc. 539).   The court entered judgment in favor of Arlington and against Bridgeport in the amount of $1,076,482.87.   (Doc. 540 ¶ 1).

On June 5, 2015, Arlington moved (Doc. 545) for attorney fees and litigation expenses, requesting exceptional case designation pursuant to 35 U.S.C. § 285. Arlington argued that Bridgeport unreasonably prolonged the instant litigation by re-raising previously rejected defenses, to wit: by opposing Arlington's motions for (1) preliminary injunctive relief; (2) summary judgment of infringement; and (3) summary judgment of damages.  (<u>See</u> Doc. 549 at 1-3, 14-19).   The court held that Bridgeport's aggressive litigation strategy did not render the case exceptional.  (<u>See</u> Doc. 570 at 9-14).   Considering the totality of the circumstances, including various proceedings in both <u>Arlington I</u> and <u>Arlington II</u>, the court denied Arlington's motion.  (<u>See</u> <u>id.</u> at 16-19).

Arlington filed the motion (Doc. 572) *sub judice* on March 31, 2016, seeking reconsideration of the court's decision pursuant to Local Rule 7.10, and petitioning for oral argument thereupon.  <u>See</u> Local Rules of Court 7.1, 7.9.   The court denied Arlington's request for oral argument by order (Doc. 584) dated May 16, 2016.  The motion is fully briefed and ripe for disposition.

II.   **Legal Standard**

Motions for reconsideration serve primarily to correct manifest errors of law or fact in a prior decision of the court.  See U.S. *ex rel.* Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 848 (3d Cir. 2014) (citing Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).  A court should grant reconsideration only if the moving party establishes: (1) newly available evidence; (2) "an intervening change in the controlling law;" or (3) "the need to correct a clear error of law or fact to prevent manifest injustice."  Id. at 848-49 (quoting Max's Seafood, 176 F.3d at 677).

A party may not invoke a motion for reconsideration as a means to relitigate matters of disagreement with the court or to advance stale arguments anew.  See Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014), aff'd sub nom. Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746 (3d Cir. 2016).  Furthermore, motions for reconsideration should "not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment."  Hill v. Tammac Corp., No. 1:05-CV-1148, 2006 WL 529044, at *2 (M.D. Pa. 2006) (citing McDowell Oil Servs., Inc. v. Interstate Fire & Gas Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993)); see Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995).  Reconsideration is an extraordinary remedy which should be "granted sparingly."  Chesapeake Appalachia, 73 F. Supp. 3d at 491; Tammac Corp., 2006 WL 529044, at *2.

The standard of review for a motion for reconsideration relates back to the standard applicable in the underlying decision.  See Sander v. Light Action, Inc.,

8

525 F. App'x 147, 149 n.6 (3d Cir. 2013) (citing <u>Fed. Kemper Ins. Co. v. Rauscher</u>, 807 F.2d 345, 348 (3d Cir. 1986)) (nonprecedential).  The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  The Supreme Court recently defined an exceptional case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134 S. Ct. 1749, 1756 (2014).  This formulation broadened the prevailing standard, which hitherto cabined a patent litigant's eligibility for attorney fees to certain delineated circumstances. <u>Id.</u> (citing <u>Brooks Furniture Mfg. v. Dutailier Int'l Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005)).  A district court must exercise "equitable discretion" and consider the totality of the circumstances when determining whether a case is exceptional, bearing in mind "frivolousness, motivation, objective unreasonableness[,] . . . and the need . . . to advance considerations of compensation and deterrence." <u>Id.</u> at 1756 & n.6 (quoting <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 n.19 (1994)).  It is the burden of the moving party to prove their entitlement to fees by a preponderance of the evidence. <u>Id.</u> at 1758.

## III.  <u>Discussion</u>

Arlington petitions for reconsideration of the denial of its request for attorney fees and litigation expenses, raising multifarious challenges to the court's memorandum opinion.  (<u>See</u> Docs. 573, 579).  Arlington's remonstrations may be aggregated into four categories: (1) the court's consideration of proceedings

independent of those for which Arlington seeks recompense; (2) the court's findings regarding the legitimacy of Bridgeport's litigation strategy; (3) the "unanimous and uncontradicted" authorities oppugning the court's decision, (Doc. 579 at 15 n.2); and (4) the purported causatum of manifest injustice to Arlington. (See Docs. 573, 579). The court will address these issues *seriatim*.

### A.    Concomitant Proceedings

Arlington first argues that the court committed an error of law by considering proceedings in <u>Arlington I</u> and <u>Arlington II</u> independent of those for which Arlington seeks fees and expenses. (See Doc. 573 at 2, 13-15; Doc. 579 at 3, 5-6, 7 n.1, 9-11). Citing to no authority, Arlington derogates the relevance of each such elucidation in the court's underlying opinion. (See Doc. 573 at 2, 13-15; Doc. 579 at 3, 5-6, 7 n.1, 9-11). In its reply brief, Arlington asserts that the totality of the circumstances inquiry mandated by <u>Octane Fitness</u> is limited to litigation matters and party conduct contained with the period of purported exceptionality. (See Doc. 579 at 9-11). Arlington misapprehends the permissible scope of the court's analysis.

The jurisprudential foundation upon which <u>Octane Fitness</u> is constructed abjures any "precise rule or formula" for deciding exceptionality. <u>Octane Fitness</u>, 134 S. Ct. at 1756. Therein, the Supreme Court instructs that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." <u>Id.</u> The Court describes the statutory text of 35 U.S.C. § 285 as "inherently flexible." <u>Id.</u> Moreover, the Federal Circuit applying <u>Octane Fitness</u> has declined to circumscribe the ambit of

permissible considerations bearing upon exceptionality.  See, e.g., SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1351-52 (Fed. Cir. 2015).

There is a direct and unequivocal connection between the proceedings for which Arlington pursues fees and expenses and the concomitant events comprised by Arlington I and Arlington II.  In its prior opinion, the court could not properly assess the manner and strength of Bridgeport's litigation positions dating from 2011 forward without performing a searching retrospective inquiry into both cases.  With fidelity to Octane Fitness, the court exercised its discretion in considering various proceedings and conduct which it deemed relevant to Arlington's motion.  (See Doc. 570).  Arlington's disputation is thus foreclosed.

Arlington further asserts that "[t]he court's denial of fees appears to have . . . been . . . based on its mistaken belief that Arlington seeks to deem the entire Arlington II case 'exceptional,' and to obtain fees for the entire litigation."  (Doc. 573 at 12; see Doc. 579 at 5).  Arlington's theory is incorrect.  Arlington enumerated the scope of its motion in pellucid terms, requesting "an award of the reasonable attorney fees and litigation expenses . . . that Arlington incurred since April 2011." (Doc. 545 at 1).  Arlington fails to direct the court to the source of its conjecture, other than to recapitulate its claims that "[t]he court . . . erroneously relied on numerous . . . moot pre-2011 disputes to deny fees."  (Doc. 573 at 13).  As discussed supra, this line of argumentation is unavailing.

Finally, Arlington urges that the court inaccurately admonished both parties for failing to "timely advise[] the court in Arlington I to the potentially binding effect of Judge Caputo's Markman ruling in the above-captioned action," when the

fault lay solely with Bridgeport.  (Doc. 570 at 19; Doc. 573 at 5; <u>see</u> Doc. 573 at 5-8).

As support, Arlington references a pretrial conference held in <u>Arlington I</u> and

observes that "the Court commended Arlington's lead counsel for immediately

providing the Court with a copy of Judge Caputo's summary judgment ruling of

non-infringement based on his claim construction."  (Doc. 579 at 6-7 (citing

<u>Arlington I</u>, Doc. 571 at 28:21-29:4)).  However, during the same pretrial conference,

the undersigned also stated the following:

> [I]t should have been clear to the parties, if it wasn't clear
> to the court, that we may be dealing with issues of
> collateral estoppel or claim preclusion . . . and I'm at a loss
> as to how so much time transpired before I received the
> indication from Bridgeport in its pretrial memo that we
> might need a stay of this proceeding.

(<u>Arlington I</u>, Doc. 571 at 29:19-30:2).

   In its memorandum opinion excising the Duplex Connectors from trial and

denying Bridgeport's motion to stay, the <u>Arlington I</u> court observed, "[I]t was

incumbent upon the litigants to prevent claim 8 from being construed in such a

conflicting manner.  That neither party did so is the cause of the court's present

dilemma."  (<u>Arlington I</u>, Doc. 584 at 6).  Further apropos of the instant matter, the

<u>Arlington I</u> court later noted that "Arlington cannot be heard to complain on this

point, for it chose to initiate parallel litigation on the same patent claim."  (<u>Arlington</u>

<u>I</u>, Doc. 776 at 13).  Arlington's selective citation misses the mark.  Hence, Arlington

fails to demonstrate any clear error of law or fact in support of reconsideration.

### B.      Bridgeport's Litigation Strategy

Arlington next submits that the court erred in concluding that Bridgeport had a reasonable basis for opposing its motions for preliminary injunctive relief, summary judgment of infringement, and summary judgment of damages.  (See Doc. 573 at 8-12; Doc. 579 at 11-13 (citing Doc. 570 at 9-14)).  The court is compelled to note that Arlington's asseverations in support of reconsideration are indistinguishable from its former ratiocination on the underlying motion.  (Compare Doc. 549 at 14-19, 22; Doc. 565 at 7-13, with Doc. 573 at 8-12; Doc. 579 at 11-13). Under the guise of challenging the court's application of the exceptionality standard under 35 U.S.C. § 285, Arlington ostensibly seeks to reargue the reasonableness of Bridgeport's litigation positions.  As the court previously noted, a motion for reconsideration may not be used to relitigate a point of disagreement with the court. See Chesapeake Appalachia, 73 F. Supp. 3d at 491.  However, the court will briefly revisit its prior findings to address Arlington's disconcertion.

In its opinion, the court considered Arlington's enumerated motions separately, finding Bridgeport's respective litigation positions to be reasonable under the circumstances.  (See Doc. 570 at 9-14).  First, the court observed that Bridgeport predicated its opposition to Arlington's request for preliminary injunctive relief on arguments then pending before the Federal Circuit in Arlington I.  (See id. at 9-10).  The court underscored this point and further emphasized that the applicability of collateral estoppel had not yet been tested,

concluding that Bridgeport's litigation strategy was appropriate.[2] (See id. at 10). With respect to Arlington's motions for summary judgment of infringement and damages, the court determined in each instance that it was reasonable for Bridgeport to "compel[] Arlington to prove the preclusive effect of the judgment[s] rendered in Arlington I," given the potential for unexplored differences between the Duplex Connectors and the Single Connectors and their respective markets. (See id. at 11-14). That the court ultimately concluded the doctrine to be applicable did not render Bridgeport's opposition meritless. (See id.) *In toto*, the court found that exceptional case designation on the basis of Bridgeport's aggressive manner of litigating was not warranted. (See id. at 17).

Arlington augments its supplications by charging that "[t]he court's decision was . . . based on a mistaken belief that Arlington claimed the case was exceptional merely because it prevailed on its preliminary injunction and summary judgment motions. To the contrary, the case is exceptional because Bridgeport had no basis to oppose the motions in the first place." (Doc. 573 at 3). The substance and provenance of the court's abovementioned analysis belies Arlington's contention.

---

[2] Arlington correctly identifies a misplaced quotation in the court's discussion of Arlington's motion for preliminary injunctive relief. (See Doc. 573 at 10). Therein, the court stated the following: "[I]n addressing a post-trial motion filed by Bridgeport in Arlington I, the undersigned observed that 'in light of the very unique circumstances present in this case, there is no doubt that Bridgeport has a reasonable probability of success on appeal.' " (Doc. 570 at 10 (quoting Arlington I, Doc. 776 at 12)). The subject of this quotation was the appeal in the above-captioned case, which the Federal Circuit resolved in Arlington's favor prior to Arlington's preliminary injunction motion. (See Doc. 365). The court disclaims any reliance thereupon. However, the court's conclusion on this point is otherwise unaltered in light of the appeal then pending before the Federal Circuit in Arlington I and the unresolved question of issue preclusion. (See Doc. 570 at 9-10).

(See Doc. 570 at 8-16).  Accordingly, the court will deny Arlington's request for reconsideration on the foregoing basis.

### C.    Relevant Authority

Arlington additionally asserts error in the court's application of relevant authority.  (See Doc. 573 at 16-20; Doc. 579 at 13-19).  Specifically, Arlington argues that "the court's decision ignores and contradicts both persuasive and binding authority that universally holds that relitigation of previously decided issues warrants an 'exceptional case' finding and an award of fees."  (Doc. 573 at 16). Arlington's tendentious challenge does not impeach the court's conclusions.

Arlington misapprehends the analysis mandated by Octane Fitness and its progeny.  Octane Fitness neither requires nor permits courts to substantially rely on the decisions of other district courts.  See Octane Fitness, 134 S. Ct. at 1756. Arlington states that "authorities [unanimously] award[] fees under the circumstances at hand."  (Doc. 579 at 14).  However, Arlington's conclusory expostulation contravenes the discretionary paradigm set forth in Octane Fitness. (See Doc. 573 at 16-20; Doc. 579 at 13-19).

Arlington cites a litany of Federal Circuit and district court cases in support of the motion *sub judice*.  (See Doc. 573 at 16-20; Doc. 579 at 13-19).  The court reviewed these and other cases as a part of its consideration of the underlying motion.  Notably, Arlington has cited to only a portion of the applicable jurisprudence.  Compare Serrano v. Telular Corp., 111 F.3d 1578, 1585 (Fed. Cir. 1997); Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1579 (Fed. Cir. 1991); Intex Recreation Corp. v. Team Worldwide Corp., 77 F. Supp. 3d 212, 215-16 (D.D.C.

2015); <u>Gharb v. Mitsubishi Elec. Corp.</u>, No. 15-00328, 2015 WL 8664185, at *8 (D.D.C. Dec. 11, 2015); <u>TechRadium, Inc., v. FirstCall Network, Inc.</u>, No. 13-2641, 2015 WL 862326, at *5-8 (S.D. Tex. Feb. 27, 2015); <u>Chi. Bd. Options Exch., Inc. v. Sec. Exch., LLC</u>, No. 07C623, 2014 WL 6978644, at *5-6 (N.D. Ill. Dec. 10, 2014); <u>Cognex Corp. v. Microscan Sys., Inc.</u>, No. 13-CV-2027 JSR, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014); <u>Precision Links Inc. v. USA Prods. Grp., Inc.</u>, No. 3:08-CV-00576-MR, 2014 WL 2861759, at *3-4 (W.D.N.C. June 24, 2014); <u>Pannonia Farms, Inc. v. Re/Max Int'l, Inc.</u>, 407 F. Supp. 2d 41, 46 (D.D.C. 2005), <u>with</u> <u>Apeldyn Corp. v. Sony Corp.</u>, No. 11-440-SLR, 2016 WL 1268146, at *2 (D. Del. Mar. 31, 2016); <u>Veracode, Inc. v. Appthority, Inc.</u>, --- F. Supp. 3d ---, No. 12-10487-DPW, 2015 WL 5749435, at *56-58 (D. Mass. Sept. 30, 2015); <u>Rudolf Techs., Inc. v. Camtek, Ltd.</u>, No. 05-1396 JRT/FLN, 2015 WL 5472523, at *2-5 (D. Minn. Sept. 16, 2015); <u>Gametek LLC v. Zynga, Inc.</u>, No. 13-2546 RS, 2014 WL 4351414, at *3-4 (N.D. Cal. Sept. 2, 2014).  The court sustains its prior holding that each case tendered by Arlington is factually distinguishable from the instant litigation.

Arlington has not presented the court with any authority declaring or suggesting that its decision, based upon the totality of the circumstances, is erroneous.  Reconsideration will not be awarded on these grounds.

### D.    Manifest Injustice

Finally, Arlington submits that the court's underlying opinion will result in manifest injustice, failing to compensate Arlington fully, and failing to deter Bridgeport from engaging in similar conduct in the future.  (<u>See</u> Doc. 573 at 20-22; Doc. 579 at 20-23).  Specifically, Arlington entreaties that "it is patently unfair for

16

Arlington not to be awarded fees for the five years of relitigation of infringement and lost profits for the Duplex Connectors." (Doc. 579 at 20). Arlington further claims that "Bridgeport is a recidivist infringer that has largely avoided any repercussions for the irreparable harm it has caused, other than having to reimburse Arlington for monetary damages." (Doc. 573 at 20). These contentions do not alter the court's analysis.

Arlington's assertion of manifest injustice based upon compensation is quickly dispatched by the court's prior determination that Bridgeport's litigation conduct does not support exceptionality. (See Doc. 570 at 9-14). Stated differently, Arlington's pleas are undermined by the court's substantive findings. Arlington's claims with respect to deterrence suffer the same fate. Bridgeport is correct in riposting that "it is illogical to suggest that the court should consider [awarding fees] . . . to deter similar reasonable arguments in the future." (Doc. 575 at 12). The court additionally notes that Arlington's contentions broadly eclipse the scope of its request for fees and expenses—counterpoising its earlier supplications—and reference matters wholly unrelated to the instant litigation. (See Doc. 573 at 20-22; Doc. 579 at 21-23). In sum, Arlington has failed to demonstrate that the court committed a clear error of law or fact in its prior opinion, or that manifest injustice will result therefrom. The court finds no basis to reconsider its findings.

17

**IV.**     **<u>Conclusion</u>**

Arlington's motion (Doc. 572) for reconsideration will be denied.  An

appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       May 27, 2016